# AMENDED EXCLUSIVE RIGHT-TO-SELL MARKETING AND SALES AGREEMENT

This agreement (the "**Agreement**") made and entered into on this 5th day of November, 2025, by and between MYC & Associates, Inc., hereinafter ("**MYC**"), maintaining its corporate address at 1110 South Avenue, Suite 22, Staten Island, NY 10314; and Richard J. McCord, solely in his capacity as the interim Chapter 7 Trustee ("**Trustee**") for the bankruptcy estate of Albert Lau ("**Debtor**"), contains the terms and conditions which will govern the marketing and sale of the Real Property as defined below as of the Effective Date (defined below).

The Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York ("**Bankruptcy Court**"), commencing Case No. 25-43298-ess. The Trustee is the Chapter 7 trustee of the Debtor's bankruptcy estate.

The Trustee seeks to retain MYC to broker the Debtor's real property, and any improvements thereon, known as 3-24 150th Street, Whitestone, New York 11357, designated in the County of Queens, State of New York, as Block 4495, Lot 101 ("**Real Property**"). The Real Property is a 7,812 SF lot improved by a multi-family residence composed of two (2) residential units and ±3,280 SF of living space.

MYC seeks to be retained as of October 29, 2025 ("**Effective Date**"), the date MYC commenced working on this matter for the Trustee.

Subject to Bankruptcy Court approval, the Trustee and MYC hereby agree that:

1.      EXCLUSIVITY. The Trustee seeks to sell the Real Property and, accordingly, grants MYC the sole and exclusive right-to-sell the Real Property as of the Effective Date. MYC shall be permitted to co-broker the Real Property as they deem appropriate and necessary to maximize the sale price of the Real Property. In no event, regardless of the number of co-brokers, shall the commission exceed the rate or alter the terms described in paragraph 4 below.

2.      TERM. The term of this Agreement is for a period of one hundred and eighty (180) days from the Effective Date. Thereafter, this Agreement shall renew automatically for succeeding terms of sixty (60) days each, under the same terms and conditions. This Agreement shall terminate automatically on the earlier of the following: (i) either party providing written notice to the other party, no less than ten (10) days in advance of any renewal date, stating that the party wishes to terminate this Agreement; or (ii) the filing of a final application by MYC to the Bankruptcy Court for commission, fees, and/or expenses.

3.      TERMS OF SALE. Any sale contract may be subject to the Trustee's receipt of higher and/or better bids, which shall be made at an auction (the "**Auction**") to be conducted in accordance with a sale procedures order entered by the Bankruptcy Court. Any sale of the Real Property will be subject to Bankruptcy Court approval and will be free and clear of all liens,

claims, encumbrances, and security interests, with such liens, claims, encumbrances, and security interests to attach to the proceeds of sale.

4. COMPENSATION. MYC will charge the Debtor's estate a broker commission in the amount of six percent (6%) of the gross proceeds realized from the sale of the Real Property ("**Commission**"). Any commission, fees, and/or expenses earned or incurred by MYC will only be paid from the Debtor's estate upon the submission of a proper compensation application, upon notice and a hearing, made to the Bankruptcy Court in accordance with applicable bankruptcy law and guidelines and approval thereof by the Bankruptcy Court. In the event the Trustee disposes for value the estate's interest in the Real Property other than through a sale of the Real Property, MYC will not be entitled to any commission but will be entitled to seek reasonable compensation for actual, necessary services rendered to the estate by MYC ("**Fee**"). In that regard, MYC will keep detailed time records and receipts in accordance with applicable guidelines.

5. REPRESENTATIONS, WARRANTIES & OBLIGATIONS. (a) MYC agrees to promote and broker the Real Property in its usual way as to obtain the highest possible selling price for the Real Property, (b) MYC shall furnish at the time of the Auction such assistants and other help as may be required to handle the Auction and shall in every way endeavor to sell the Real Property for as high a price as may be obtained, and (c) shall conduct the Auction in accordance with the terms and conditions of sale and/or bidding procedures that are approved by the Bankruptcy Court.

6. MISCELLANEOUS. This Agreement shall be binding upon the parties hereto and their respective successors, heirs, and assignees. Nothing in this Agreement, express or implied, is intended to confer or does confer on any person or entity, other than the parties hereto and their respective successors, heirs, and assigns any rights or remedies under or by reason of this Agreement. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect pursuant to the terms hereof. This Agreement incorporates the entire understanding of the parties regarding the subject matter hereof and supersedes all previous agreements or understandings regarding the same, whether written or oral. This Agreement may not be amended, and no portion hereof may be waived, except in a writing duly executed by the parties. The parties hereto acknowledge and agree that this Agreement has been negotiated at arm's length and among parties equally sophisticated and knowledgeable in the matters dealt with in this Agreement. Accordingly, any rule of law or legal decision that would require interpretation of any ambiguities in this Agreement against the party that has drafted it is not applicable and is waived. The provisions of this Agreement shall be interpreted in a reasonable manner to affect the intent of the parties as set forth in this Agreement.

7. EXPENSES. If MYC earns a Fee it will be permitted to seek reimbursement of out-of-pocket expenses from the Debtor's estate incurred relating to the administration of the Debtor's estate, marketing, advertising and sale of the Real Property, with such amount of the out-of-pocket expenses to be paid upon the submission of a proper application, upon notice and hearing, made to the Bankruptcy Court in accordance with applicable bankruptcy law and guidelines and approval thereof by the Bankruptcy Court. If MYC earns a Commission for the sale of the Real Property, it shall not be permitted to seek reimbursement of expenses relating to

the marketing and advertising for the Real Property to which a commission was earned. However, MYC may submit a proper application for reimbursement from the Debtor's estate of all other expenses relating to the administration of the estate, which shall only be paid upon the approval of said application by the Bankruptcy Court.

8. This Agreement shall be governed by the laws of the State of New York, without regard to such state's rules concerning conflicts of laws. Each party irrevocably waives any right to trial by jury in any action, proceeding, or counterclaim (whether based upon contract, tort, or otherwise) related to or arising out of this Agreement.

9. This Agreement is subject to Bankruptcy Court approval, and the parties irrevocably consent to the Bankruptcy Court's jurisdiction with respect to any action to approve or enforce this Agreement and expressly waive any right to commence any action in any other forum or to contest the Court's jurisdiction.

10. The parties agree that the Bankruptcy Court retains exclusive jurisdiction over the subject matter of this Agreement, including, but not limited to, the implementation and interpretation of the terms and conditions herein.

11. This Agreement may be executed in one or more counterparts, each of which is deemed an original, together constituting one and the same document. Facsimile signatures and signatures in portable document format (.pdf) are deemed originals for the purposes of this Agreement.

12. The persons executing this Agreement on the parties' behalf warrant and represent that they are authorized and empowered to execute and deliver this Agreement on behalf of such party.

AGREED TO AND ACCEPTED BY:

Richard J. McCord, Esq. solely in his capacity as the interim Chapter 7 Trustee for Albert Lau

SIGN: _____

DATE: _____


MYC & Associates, Inc.

BY: _____
   Marc P. Yaverbaum

ITS:    Vice President

DATE: _____