**CERTILMAN BALIN ADLER & HYMAN, LLP**
Richard J. McCord, Esq.
Robert D. Nosek, Esq.
Counsel to the Chapter 7 Trustee
90 Merrick Avenue
East Meadow, New York 11554
Phone: (516) 296-7000
Fax: (516) 296-7111

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

ALBERT LAU,

Debtor.

-----------------------------------------------------------X

Chapter 7

Case No: 25-43298-ess

**TRUSTEE'S APPLICATION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 363 (I) APPROVING (A) BIDDING PROCEDURES FOR THE SALE OF THE REAL PROPERTY LOCATED AT 3-24 150ᵀᴴ STREET, WHITESTONE, NEW YORK 11357; (B) DESIGNATION OF STALKING HORSE BIDDER, (C) BID PROTECTIONS IN FAVOR OF THE STALKING HORSE BIDDER, (D) DATE AND TIME FOR AN AUCTION AND A HEARING FOR APPROVAL OF THE SALE, AND (E ) THE FORM AND MANNER OF NOTICE THEREOF; (II) AN ORDER APPROVING THE SALE OF THE REAL PROPERTY LOCATED AT 3-24 150ᵀᴴ STREET, WHITESTONE, NEW YORK 11357 FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS; AND (III) SHORTENING TIME FOR NOTICE**

**RICHARD J. MCCORD**, Chapter 7 trustee (the "Trustee") of the bankruptcy estate ("Estate") of Albert Lau (the "Debtor"), by and through his attorneys, Certilman Balin Adler & Hyman, LLP, respectfully submits this Motion for an Order pursuant to 11 U.S.C. §§ 105, 363 and Rules 2002, 6004, 9004 and 9006 (c)(1) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), (i) authorizing the Trustee to sell the real property located at 3-24 150ᵗʰ Street, Whitestone, New York 11357 (the "Whitestone Property"), pursuant to the terms as set forth in the Contract of Sale between "Richard J. McCord, as Chapter 7 Trustee for the Estate of

1

Albert Lau." as seller, and "61 Nison Badalov LLC, as purchasers ("Proposed Stalking Horse Purchaser") and executed by Proposed Stalking Horse Purchaser on June 8, 2026, for the total sum of One Million Two Hundred Thousand Dollars ($1,200,000.00) (the "Purchase Price") subject to higher and betters offers at public auction, free and clear of all liens, claims, encumbrances and other interests, with such liens, claims, encumbrances and other interests (collectively, the "Liens") to attach to the net proceeds of sale with the same validity and priority as such Liens had prior to the sale; (ii) as part of the sale, assuming and assigning any and all leases and/or tenancies, if any, for any occupants in the Whitestone Property; (iii) scheduling a hearing to approve the sale of the Whitestone Property to the successful bidder; (iv) approving terms and conditions for submitting offers and approving the form and manner of notice with respect to the hearing; (v) approving shortened notice for the requested relief pursuant to Section 105 of the Bankruptcy Code ad Bankruptcy Rule 9006 (c)(1); and (vi) granting such other, further and different relief as this Court deems just, proper and equitable (the "Motion"), and respectfully states as follows:

## JURISDICTION

1.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1334, 11 U.S.C. §§ 105(a), 363(a), (b), (f) and (m), 365(a) and (f), Bankruptcy Rules 2002, 6004, 9004 and 9006(c)(1).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).

## BACKGROUND FACTS

2.     On Ju1y 10, 2025 (the "Petition Date") the Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"), and on July 10, 2025, the Trustee was appointed.

3.     Schedule A/B of the Voluntary Petition reflects that the Debtor is the owner of Whitestone Property,  which is listed as having a value of $500,000.00. Annexed hereto as **Exhibit**

2

10039984.1

**A** is a copy of Schedule A/B.

4.  Schedule C of the Voluntary Petition reflects that the Debtor is claiming state and federal non-bankruptcy exemptions and there was no homestead exemption claimed. Annexed hereto as **Exhibit B** is a copy pf Schedule C.

5.  Schedule D of the Voluntary Petition reflects that there is a secured claim held by Abacus Federal Savings Bank ("Abacus"). There is no amount of claim reflected on this schedule. Annexed hereto as **Exhibit C** is a copy of Schedule D.

6.  On August 18, 2025, Abacus filed the Motion to Confirm Termination or Absence of Stay regarding 3-24 150th Street, Whitestone, NY 11357 (ECF No. 17)("Motion for Relief"). The Motion for Relief, at Exhibit D, reflects that the amount due and owing to Abacus, as of July 10, 2025, was $546,300.19. This exhibit further reflected that the Whitestone Property was valued at $1,600,000.00. Annexed hereto as **Exhibit D** is a copy of the Relief from Stay- Real Estate and Cooperative Apartments which reflects this information.

7.  The Trustee prepared and filed the Application for the Retention of MYC & Associates, Inc. ("MYC") as Real Estate Broker to the Trustee to market and sell the Whitestone Property (ECF No.29). The Application was granted, and on November 6, 2025, the Order was entered authorizing MYC's retention (ECF No. 31).

8.  The Debtor's §341A Meeting of Creditors ("341 Meeting") was scheduled for August 13, 2025, at 2:00 p.m. The Debtor failed to appear, and the 341 Meeting was adjourned to September 10, 2025, at 12:00 p.m. The Debtor failed to appear, and the 341 Meeting was adjourned to September 25, 2025, at 11:00 a.m. The Debtor appeared at said 341 Meeting and was examined by the Trustee. The 341 Meeting has been adjourned, for holding date purposes, to July 8, 2026, at 2:30 p.m.

3

9.      The Trustee requested numerous documents from the Debtor including documents pertaining to the Whitestone Property, but the Debtor did not comply with the Trustee's requests.

10.     Taking into consideration the amount of equity in the Whitestone Property and the lack of documentation, the Trustee filed a Limited Objection to the Motion to Confirm the Absence of the Automatic Stay (ECF No. 22).

11.     The Motion for Relief was adjourned from time to time and then set down for hearing on March 31, 2026, at which time the Motion for Relief was granted. On April 7, 2026, the Order Confirming that the Automatic Stay is Modified (ECF No. 46)(the "Stay Order"). The Order contained a provision that the Order was to become effective thirty days from the date of the entry of the Order.

12.     The Trustee filed a Notice of Discovery of Assets, and the Court scheduled a bar date for December 29, 2025. To date, there have been no claims filed. Although not reflected in the Debtor's Schedules, the Trustee conducted his due diligence and discovered that the Debtor has two unsecured claims, American Express and JPMCB Card. The Trustee will contact these creditors to file proofs of claims.

13.     Based upon MYC's marketing efforts, the Trustee has received an offer of $1,200,000.00 from the Proposed Stalking Horse Purchaser to purchase the Trustee's right title and interest in the Whitestone Property, subject to the Leases, if any.

14.     The Trustee contacted counsel for Abacus with regard to the offer received by the Trustee. Abacus has consented to the sale to the Proposed Stalking Horse Purchaser with the caveat that the sale be completed by July 31, 2026.

10039984.1

15. As the Stay Order was entered, Abacus can continue with the foreclosure action and continue with the sale of the Whitestone Property. Abacus has consented to the Trustee selling the Whitestone Property which must be completed by July 31, 2026. Taking into consideration the time constraints to complete the sale, the Trustee is requesting that the approval of the sale be on shortened notice.

16. The Trustee wishes to sell the Whitestone Property, free of all liens, claims, encumbrances and other interests, if any, and subject to higher and better offers and assume and assign the Leases, if any. The Trustee is holding a 10% deposit in the amount of $120,000.00 (the "Downpayment"). The sale of the Whitestone Property is "as is," without any warranties, guarantees and/or representation regarding, among other things, the condition of the Whitestone Property or the existence of any Leases. Annexed hereto as **Exhibit E** is a copy of the Stalking Horse Contract of Sale.

17. The Trustee wishes to sell the Whitestone Property, free and clear of all Liens, which Liens shall attach to the proceeds of the sale with the same validity and priority as such Liens had prior to the sale, and assume and assign the Leases, if any, and subject to higher and better offers, pursuant to the Stalking Horse Contract of Sale for a Purchase Price of $1,200,000.00.

### SUMMARY OF STALKING HORSE CONTRACT OF SALE[1]

18. The Trustee shall sell to the Proposed Stalking Horse Purchaser, and Proposed Stalking Horse Purchaser shall purchase from the Trustee, at the price and upon the terms and conditions set forth in the Stalking Horse Contract of Sale: the Whitestone Property, together with

---

[1] The description set forth herein is only a summary of the provisions contained in the Stalking Horse Contract of Sale, and the Trustee recommends that creditors and interested parties read the Stalking Horse Contract of Sale in its entirety. To the extent that there is any conflict between the terms of the Stalking Horse Contract of Sale and the terms of this Application, the terms of the Stalking Horse Contract of Sale shall control.

10039984.1

all buildings and improvements thereof, together with the Trustee's Seller's ownership rights, if any, in any land lying in the bed of any street or highway, opened or proposed, adjoining the Whitestone Property  to the center line thereof, including any right of Trustee to any unpaid award by reason of any taking by condemnation and/or for any damage to the Whitestone Property by reason of change of grade of any street or highway.  The Trustee shall deliver at no additional cost to Proposed Stalking Horse Purchaser, at Closing, or thereafter, on demand, any documents which Proposed Stalking Horse Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages; **Personal Property.**  This sale also includes all fixtures and articles of personal property attached to or used in connection with the Whitestone Property, unless specifically excluded below.  They include, but are not limited to, plumbing, heating, lighting and cooking fixtures, bathroom and kitchen cabinets and counters, door hardware, mantels, doors, mirrors, awnings, mail box, flagpole, pumps, shrubbery, fencing, outdoor statuary, tool shed, dishwasher, washing machine(s),  clothes dryer(s), garbage disposal unit, range, oven, built-in microwave oven, refrigerator, freezer, central air conditioning, ceiling fans, alarm system, wall-to-wall carpeting where it presently exists, and built-ins not excluded below, **<u>ALL TO THE EXTENT THEY EXIST AT THE PREMISES IN AS-IS WHERE-IS CONDITION.</u>** Excluded from this sale are furniture, household furnishings, and/or other items of personal property not specifically referred to in the Proposed Stalking Horse Contract of Sale.

The Proposed Stalking Horse Purchaser acknowledges  and represents that the Proposed Stalking Horse Purchaser is fully aware of the current physical condition and state of repair of the Whitestone Property and of all other property included in this sale, based upon Proposed Stalking Horse Purchaser's own inspection and investigation thereof, and that the Proposed Stalking Horse Purchaser is entering into this Contract based solely upon such inspection and investigation and

10039984.1

not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the Whitestone Property or the other property included in the sale (if any), given or made by Seller or its representatives. The Proposed Stalking Horse Purchaser has relied solely upon such investigations, examinations and inspections as the Purchaser has chosen to make or had made. The Proposed Stalking Horse Purchaser acknowledges that the Trustee has afforded the Proposed Stalking Horse Purchaser the opportunity to conduct a full and complete investigation, inspection and examination and this Contract is not conditioned on any inspections of any kind. **PROPOSED STALKING HORSE PURCHASER SHALL ACCEPT THE WHITESTONE PROPERTY IN ITS PRESENT CONDITION AND STATE OF REPAIR, "AS IS, WHERE IS, WITH ALL FAULTS" SUBJECT TO REASONABLE USE, WEAR, TEAR, AND NATURAL DETERIORATION BETWEEN THE DATE HEREOF AND THE DATE OF CLOSING, WITHOUT ANY REDUCTION IN THE PURCHASE PRICE OR CLAIM OF ANY KIND FOR ANY CHANGE IN SUCH CONDITION BY REASON THEREOF SUBSEQUENT TO THE DATE OF THIS CONTRACT.** The Proposed Stalking Horse Purchaser and its authorized representatives shall have the right, at a reasonable time, and upon reasonable notice to the Trustee, to inspect the Whitestone Property before Closing. Title to any personal property and/or appliances included in this sale shall pass to Purchaser upon delivery of deed, but no part of the Purchase Price shall be deemed to have been to pay for same. **ALL OF THE ITEMS OF PERSONAL PROPERTY AND/OR APPLIANCES INCLUDED IN THIS SALE ARE SOLD IN "AS IS, WHERE IS" CONDITION WITH ALL FAULTS AS OF THE DATE OF CLOSING.**

19. The Trustee shall give, and Proposed Stalking Horse Purchaser shall accept, such

title as Advantage Title Agency Group LLC or any other reputable title company, a member of The New York Board of Title Underwriters, shall be willing to approve and insure, in accordance with its standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for in this Contract. The Trustee acknowledges that Proposed Stalking Horse Purchaser may engage any title company of its choice in connection with this transaction; however, the Trustee strongly recommends that Proposed Stalking Horse Purchaser engages Advantage Title Agency Group LLC with respect to this transaction. Proposed Stalking Horse Purchaser expressly acknowledges and agrees that if the title company selected by Proposed Stalking Horse Purchaser refuses to insure title free of any matter(s), and another abstract company or title company will insure title free of such matter(s) at no additional premium, then the Trustee shall have the right to transfer the title order from Proposed Stalking Horse Purchaser's selected title company and engage such other abstract company or title company on Proposed Stalking Horse Purchaser's behalf and at Proposed Stalking Horse Purchaser's cost and expense.

20. At Closing, official bank checks payable to the order of the Title Company or the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by this Contract to pay such transfer and/or recording tax, together with any required tax returns duly executed and sworn to by the appropriate parties, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing. STALKING HORSE PURCHASER SHALL PAY THE NEW YORK CITY REAL PROPERTY TRANSFER TAXES, AND THE SO-CALLED "MANSION TAX." SELLER SHALL PAY THE NEW YORK STATE TRANSFER TAX.

10039984.1

21.     As the Trustee  seeks to conduct an auction, with respect to any offer that is received, accepted and approved (the "Highest Bid"), the offeror ("Highest Bidder") shall assume all of the terms of the Stalking Horse Contract of Sale between Trustee and Proposed Stalking Horse Purchaser, a copy of which is annexed hereto as **Exhibit E** (as such terms, including those with respect to the Purchase Price, shall have been modified by the terms of the auction), and the Stalking Horse Contract of Sale as so modified shall not thereafter be conditioned upon or subject to Trustee not receiving a higher or better offer.

22.     The Proposed Stalking Horse Purchaser and the Trustee represent and warrant to each other that they have not dealt with any broker in connection with this sale other than Landmark International RE LLC ("Purchaser's Broker") and MYC  (the "Listing Broker" and together with Proposed Stalking Horse Purchaser's Broker, collectively, the "Broker").  Trustee agrees to pay the Listing Broker the commission earned thereby, pursuant to separate agreement by and between the Trustee and the Listing Broker.  Proposed Stalking Horse Purchaser shall pay Proposed Stalking Horse Purchaser's Broker the commission earned thereby, pursuant to separate agreement by and between Proposed Stalking Horse Purchaser and Proposed Stalking Horse Purchaser's Broker. The Trustee and Proposed Stalking Horse Purchaser shall indemnify and hold each other harmless from and against any claim, judgment, liability, cost or expense, including, without limitation, reasonable attorney's fees, arising out of the breach on their respective parts of any representation or agreement contained in this paragraph.  The provisions of this paragraph shall survive the Closing, or if the Closing does not occur, the termination of the Proposed Stalking Horse Contract. The Truste shall pay MYC pursuant to a separate agreement between Trustee and MYC and pursuant to Order of the Bankruptcy Court upon the filing of the proper application for compensation on notice to all creditors and parties in interest.

10039984.1

23. New York Tax Law §1405(b)(8) provides an exemption from New York State real estate transfer tax for conveyances given pursuant to the federal bankruptcy act. The sale of the Whitestone Property is not subject to New York State transfer taxes. The Stalking Horse Purchasers shall pay all other transfer taxes, including, without limitation, the New York City transfer tax, the so-called "mansion tax" and any transfer taxes imposed upon a Stalking Horse Purchaser by statute, the title insurance premium and the costs of searches and services charge by the Title Company (if any), the cost of all recording charges in connection with the closing other than the charges incurred to record documents in connection with the clearing of title by Trustee pursuant to the Stalking Horse Contract of Sale (which recording charges shall be paid by Trustee), except as otherwise provided therein.

## BIDDING PROCEDURES

24. The Trustee proposes and seeks Court approval of the following bidding procedures ("Bidding Procedures") for any third party wishing to submit a bid for the estate's interest in the Whitestone Property at the Auction Sale to be conducted by the:

> (a) These terms and conditions of sale ("Terms and Conditions of Sale") are being promulgated in connection with the United States Bankruptcy Court, Eastern District of New York ("Bankruptcy Court") authorized auction sale ("Sale") of Debtor's real property commonly known 3-24 150th Street, Whitestone, New York 11357 ("Whitestone Property"). The seller of the Properties is Richard J. McCord, Chapter 7 Trustee ("Trustee" and/or "Seller") for the estate of Albert Lau, debtor ("Debtor"), a debtor in a Chapter 7 case currently pending in the Bankruptcy Court under the caption and case number set forth above; The Trustee's retained real estate broker ("Broker") is MYC & Associates, Inc. ("MYC"), 1110 South Avenue, Suite 22, Staten Island, New York 10314; Telephone (347) 273-1258; email: sales@myccorp.com; and website: www.MYCcorp.com.

> (b) The auction sale ("Sale") will take place online via Zoom on July 17, 2026, at 11:00 a.m. The bid deadline is July 16, 2026, at 5:00 p.m. Only those who submit a Competing Offer, as that term is defined in ¶e below, and qualify to bid on the Properties, will receive the Zoom link to participate

10039984.1

in the Sale.

( c)      Information regarding the Sale of the Whitestone Property can be obtained by contacting the Trustee's counsel at the telephone number and address set forth herein or by contacting MYC or on the MYC website which information is set forth in paragraph "A" above.

(d)      The Trustee, in his sole discretion and under his business judgment authority, has entered into a stalking horse contract ("Agreement") with a potential buyer ("Stalking Horse Bidder") that offers a purchase price that Trustee deems to be a reasonable and valid purchase offer ("Stalking Horse Offer"). The Trustee shall use the Stalking Horse Offer as the reserve sale price at the Sale, such that the Stalking Horse Offer will be the opening bid at the Sale.

(e )      In order to be considered by the Court and admissible on the date of the Sale Hearing, any competing offer ("Competing Offer") must satisfy the following terms and conditions: (i) a Competing Offer shall provide for a Purchase Price of at least $50,000.00 more than the Purchase Price or at least $1,250,000.00; (ii) the Competing Offer shall be substantially similar to the terms and conditions of the Agreement; (iii) a higher or better Competing Offeror must sign these Terms and Conditions of Sale agreeing to be bound by the terms and conditions of the Agreement; (iv) the Competing Offer shall have demonstrated, to the sole satisfaction of the Trustee and his counsel, evidence of its ability to conclude the transaction upon the terms and conditions of the Agreement, without delay; (v) the Competing Offer shall not be conditioned upon the outcome of unperformed due diligence by the Competing Offeror with respect to the Properties which are the subject of the Agreement; and (vi) the Competing Offeror shall provide, before the Sale Hearing, a certified check made payable to Richard J. McCord as Chapter 7 Trustee, the sum of ten percent (10%) of the proposed purchase price as the Deposit, as that term is defined in ¶g below.

(f)      In order to be permitted to bid on the Property by 5:00 p.m. (EST) on July 16, 2026, and as a condition to be able to bid on the Whitestone Property at the Sale, each prospective bidder must: (i) register with MYC; (ii) deliver to MYC the original signed Terms and Conditions of Sale; and (iii) tender a bank check in the amount of $125,0000.00 ("Qualifying Deposit") made payable to "Richard J. McCord, Chapter 7 Trustee", which amount shall serve as a good faith deposit against payment of the purchase price by such bidder in the event that such bidder is determined to have made the highest or best bid ("Successful Bidder").

(g)      Within forty-eight (48) hours after conclusion of the Sale, the Successful Bidder of the Whitestone Property shall deliver to the Trustee a

11

10039984.1

bank check which amount must be equal to ten (10%) percent of the successful bid, minus the Qualifying Deposit (together with the Qualifying Deposit, the "Deposit"). The Successful Bidder for the Whitestone Property must execute, and thereby agree to be bound by: (i) these Terms and Conditions of Sale; and (ii) a Memorandum of Sale. At the conclusion of the Sale, the Trustee, or his representative, will return the Qualifying Deposits to all other bidders. The Trustee, however, shall retain the Qualifying Deposit of the second highest bidder ("Second Bidder").

(h)  The Successful Bidder, or its assigns, must close title (the "Closing") to the Properties on a date (the "Closing Date") that is not more than thirty (30) calendar days after the entry of an order of the Bankruptcy Court confirming the Sale, TIME BEING OF THE ESSENCE AS TO THE SUCCESSFUL BIDDER, OR ITS ASSIGNS. The Closing Date may be extended solely by the Trustee in his sole discretion. The Closing will take place using a method and at a location that is to be determined by the Trustee.

(i)  The Bankruptcy Court, prior to the Closing, must enter an Order confirming the Sale.

(j)  The Successful Bidder, or its assigns, shall be responsible solely and shall pay any and all New York City, New York State, or other applicable real property transfer taxes incurred by the transfer of the Whitestone Property by Debtor's estate at the Closing. The Successful Bidder, or its assigns, acknowledges that he, she, or it, will be responsible for the completion of any ACRIS forms, if required.

(k)  In connection with the Closing and Closing Date, the Successful Bidder, or its assigns, is hereby given notice that **Time is of the Essence against the Successful Bidder, or its assigns, and the failure of the Successful Bidder, or its assigns, to close for any reason whatsoever (except as otherwise provided below) including his, her, or its, failure to pay the balance of the Purchase Price on the Closing Date, will result in the Trustee retaining the Deposit as liquidating damages and the termination of the Successful Bidder, or its assigns, right to acquire the Property under these Terms and Conditions of Sale**. The Successful Bidder, or its assigns, shall be obligated to close title to the Whitestone Property and there is no contingency of any kind or nature that will permit the Successful Bidder, or its assigns, to cancel or avoid his, her, or its, obligation under these Terms and Conditions of Sale other than the Trustee's inability to deliver insurable title to the Whitestone Property. Further, the Successful Bidder, or its assigns, must demonstrate, to the satisfaction of the Trustee or the Bankruptcy Court, as the case may be, evidence of his, her, or its, ability to conclude the transaction upon these

12

10039984.1

Terms and Conditions of Sale, without delay. The Trustee reserves the right to reject any bidder/offeror, who the Trustee, in his sole discretion, believes is not financially capable of consummating the purchase of the Whitestone Property. **Expenses incurred by the Successful Bidder, or its assigns, or any competing bidder concerning the performance of any due diligence, such as obtaining title reports or environmental inspections, shall be the sole financial responsibility of such bidder and under no circumstances shall the Trustee, the Debtor's estate, MYC, or the Trustee's retained professionals, be liable or responsible for, or pay, such expenses.**

(l)    In the event that the Successful Bidder for the Whitestone Property, or its assigns, fails to tender the balance of the Purchase Price on the Closing Date, or otherwise perform his, her, or its, obligations under these Terms and Conditions of Sale, the Trustee, at his sole option, shall immediately negotiate the Qualifying Deposit of the Second Bidder and shall be further authorized to sell the Whitestone Property to the Second Bidder, or its assigns, without any further notice or approval of the Bankruptcy Court, without giving credit to the Second Bidder for the Deposit forfeited by the Successful Bidder, and upon such other terms and conditions as the Trustee deems necessary and/or appropriate. Should the Second Bidder, or its assigns, fail to close on the Whitestone Property within twenty (20) days of receiving from the Trustee, notice, **TIME BEING OF THE ESSENCE**, (at the address set forth on the bidder registration form) that said Second Bidder is now deemed the Successful Bidder, then the **Sellers shall be: (a) authorized to keep the Qualifying Deposit of the Second Bidder as liquidated damages**; and (b) authorized but not obligated to sell the Properties to the next highest bidder, without any further notice or approval of the Court.

(m)    The Whitestone Property are being sold and delivered free and clear of all liens, claims and encumbrances of whatever kind or nature, excepting any open building permits (which the Trustee has determined do not exist), to the extent the sale of the Whitestone Property includes items of personal property, the transfer shall be "as is" and without warranty, express, statutory, or implied, as to discretion, title, condition, location, quality, fitness or any particular use or purpose or otherwise.

(n)    The Whitestone Property is being sold and delivered **"AS IS", "WHERE IS", "WITH ALL FAULTS"**, without any representations, covenants, guarantees or warranties of any kind or nature whatsoever, and free and clear of all monetary liens, claims and encumbrances of whatever kind or nature, such liens, claims, interests and encumbrances, if any, to attach to the proceeds of Sale in such order and priority as they existed immediately prior to the Sale Date, and subject to, among other things: (a)

10039984.1

any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; ® environmental conditions; and (f) subject to all deed restrictions. By delivering their respective Qualifying Deposits, all bidders acknowledge that they have had the opportunity to review and inspect the Whitestone Property, the state of title thereof and laws, rules and regulations applicable thereto, and the form of the Trustee's Deed that the Trustee will execute to convey the Whitestone Property, and will rely solely thereon and on their own independent investigations and inspections of the Whitestone Property in making their bids. All bidders acknowledge that they have conducted their own due diligence in connection with the Whitestone Property and are not relying on any information provided by the Trustee, MYC, or the Trustee's retained professionals.

(0)     The Whitestone Property will be delivered subject to any and all existing tenancies and occupancies.

(p)     The Trustee, MYC, and Trustee's retained professionals have not made and do not make any representations or warrantees with respect to the permissible uses of the Whitestone Property, the physical condition, rents, leases, expenses, operations, value of the land or buildings thereon, number of building lots, use or any other matter or thing affecting or related to the Whitestone Property or the Sale, that might be pertinent to the purchase of the Whitestone Property, including, without limitation: (a) the current or future real estate tax liability, assessment or valuation of the Whitestone Property; (b) the potential qualification of the Whitestone Property for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (c) the compliance or non-compliance of the Whitestone Property, in its current or any future state, with applicable current or future zoning ordinances or other land use law or regulation, or the ability of the owner of the Whitestone Property to obtain a change in the zoning or use, or a variance in respect to the Whitestone Property; (d) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Whitestone Property from any source, including, but not limited to, any state, city, local government or federal government or institutional lender; ® the current or future use of the Whitestone Property; (f) the present and future condition and operating state of any and all machinery or equipment in the Whitestone Property and the present or future structural and physical condition of any buildings thereon or its suitability for rehabilitation or renovation; (g) the ownership or state of title of any personal property in the Whitestone Property; (h) the presence or absence of any laws, ordinances,

14

10039984.1

rules or regulations issued by any governmental authority, agency or board and any violations thereof; (i) any present or future issues concerning subdivision or non-subdivision of the Whitestone Property; or (j) the compliance or non-compliance of the Whitestone Property with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos or other hazardous materials anywhere in the Whitestone Property. Each bidder hereby expressly agrees and acknowledges that no such representations have been made. The Trustee and his retained professionals shall not be liable or bound in any manner by expressed or implied warranties, guaranties, promises, statements, representations or information pertaining to the Whitestone Property, made or furnished by the Trustee or any real estate broker, agent, employee, servant or other person or professional representing or purporting to represent the Trustee unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in a signed writing by the Trustee.

(q)     The Trustee shall convey the Whitestone Property by delivery of a Trustee's quitclaim deed.  The quality of title shall be that which a reputable title insurance company doing business in the State of New York is willing to approve and insure.  At the Trustee's option, he may arrange for the issuance of a title insurance policy by a reputable title company, if the Successful Bidder is unable to do so, at the sole cost and expense of the Successful Bidder.  The Trustee shall provide all documents required by the Successful Bidder's title company for them to 'omit' any exceptions from the Successful Bidder's title policy.

®     Nothing contained in these Terms and Conditions of Sale shall supersede or alter any provisions of Title 11, United States Code ("Bankruptcy Code") and/or of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") or otherwise interfere with the jurisdiction of the Bankruptcy Court.  To the extent of any conflict between the Bankruptcy Code and/or the Bankruptcy Rules and these Terms and Conditions of Sale, the Bankruptcy Code and/or the Bankruptcy Rules shall govern.  All of the terms and conditions set forth in these Terms and Conditions of Sale are subject to modification as may be directed by the Trustee, or by the Bankruptcy Court.  The Trustee reserves the right to modify these Terms and Conditions of Sale at the Sale, or thereafter, without further order of the Bankruptcy Court, so long as they maintain consistency with the provisions of the Bankruptcy Code, Bankruptcy Rules, and/or orders of the Bankruptcy Court.

(s)     Neither the Trustee, MYC, the Trustee's retained professionals, nor Debtor's estate, are liable or responsible for the payment of fees of any broker or agent that has not been retained by an order of the Bankruptcy

15

10039984.1

Court.

(t)     These Terms and Conditions of Sale will be read into the record, or specifically incorporated by reference, at the Sale of the Whitestone Property.  By making a bid for the Whitestone Property, all bidders shall be deemed to have acknowledged having read, and understand, these Terms and Conditions of Sale and have agreed to be bound by them.

(u)     The Trustee shall be a party to the Sale of the Whitestone Property exclusively in his capacity as trustee in bankruptcy and not as an individual. If the Trustee is unable to deliver title to the Whitestone Property in accordance with these Terms and Conditions of Sale for any reason whatsoever, his only obligation will be to refund the Deposit to the Successful Bidder (or Second Bidder) and upon such refund the Successful Bidder (or Second Bidder) will have no recourse or claim against the Trustee, the Trustee's retained professionals, or Debtor's estate.

(v)     The Trustee reserves his right to withdraw the Whitestone Property from the Sale, either prior or subsequent to the Sale, for any reason whatsoever, as he deems necessary or appropriate.

(w)     The Sale of the Whitestone Property is subject to confirmation by the Bankruptcy Court. The Trustee or the Trustee's attorney shall notify the Successful Bidder whether the Sale is confirmed.  Any disputes concerning the Sale shall be determined by the Bankruptcy Court.  By participating in the Sale, all bidders consent to the jurisdiction of the Bankruptcy Court to determine such disputes arising in the Debtor's pending case.

(x)     **By making a bid for the Whitestone Property, all bidders shall be deemed to have acknowledged having read, and understand, these Terms and Conditions of Sale and have agreed to be bound by them.**

The Trustee believes that the preceding procedures constitute appropriate bidding procedures under the facts and circumstances of this case.  In order to maximize the benefit to the Estate, the Trustee seeks to implement this reasonably competitive bidding process given the nature of the proposed transaction.  The Trustee maintains that this procedure is designed to generate a maximum recovery to the Estate while serving to prevent frivolous bidding and respectfully requests the Court to approve and authorize same.

**LEASE ASSUMPTION AND ASSIGNMENT PROCEDURES**

10039984.1

25.     Upon information and belief, the Whitestone Property has an occupant, which may have now or at some point in the past a lease or license permitting such occupancy of delineated portions of such property. Upon information and belief, the occupant of the Whitestone Property is the Debtor's estranged wife but the Trustee is not aware of any leases or licenses. No one has provided the Trustee with copies of any writings evidencing such rights to occupancy.  Regardless, because such occupant exists, even if through month-to-month oral agreement or lapse of a prior written agreement, and that the Proposed Stalking Horse Purchaser is acquiring the Whitestone Property subject to such occupants, in an abundance of caution the Trustee seeks to assume and assign any leases or licenses for occupancy, if any to the Stalking Horse Purchaser.  NOTHING CONTAINED HEREIN, IN THE CONTRACT OF SALE OR OTHERWISE CAN OR SHALL BE CONSTRUED AS AN ADMISSION OR ACKNOWLEDGMENT BY THE TRUSTEE OR ANY OF HIS REPRESENTATIVES OF THE EXISTENCE OF ANY UNEXPIRED LEASE OR LICENSE, WHETHER WRITTEN OR ORAL, TO USE AND OCCUPY ANY PORTION OF THE WHITESTONE PROPERTY.  This particular relief is being sought at this time in the event that any occupant of any of the Whitestone Property later produces an unexpired written lease or license or otherwise is occupying any portion of the Whitestone Property under a month-to-month lease or license which is found to be unexpired at the time of the closing of the Sale.

26.     Accordingly, to facilitate the sale of the Debtor's real property asset, the Trustee seeks authority to assume and assign each of the Leases, if any exist, associated with the Whitestone Property being offered for sale. Thus, the Trustee is seeking authority to establish a process (the "Assignment Procedures") to (a) determine the amount of any cure obligations, if any, necessary to be satisfied in accordance with Bankruptcy Code section 365 for all of the Leases

17

being assumed and assigned, and (b) establish objection procedures for the occupants.

27. The proposed Assignment Procedures provide as follows:

(a) Notice of Assignment Procedures. The Trustee will file an assignment schedule (the "Assignment Schedule") with the Court and serve such Assignment Schedule on each affected occupant by any reasonable means, including, first class mail, facsimile transmission, e-mail, or overnight delivery service. The Assignment Schedule will include (i) the name of the affected occupant, (iii) any applicable cure amounts through _____, including a per diem calculation, if necessary; (iv) the identity of the proposed assignee, and (vi) the deadline by which the affected Tenant must object. Within five (5) days after entry of an order approving this Motion, the Trustee shall serve on each occupant a package of materials from the proposed assignee evidencing the proposed assignee's ability to perform as lessor under the Leases related to the respective Whitestone Property ("Adequate Assurance Packet"). If a different proposed assignee becomes known after the filing and service of an Assignment Schedule because of the results of the Auction, the Trustee shall provide each affected Tenant with the applicable Adequate Assurance Packet.

(b) Objection to Assumption and Assignment of Leases and Cure Procedures. Any objections ("Objection") to the assumption and assignment of any Lease identified on the Assignment Schedule, including to the cure amount set forth on such schedule, must be in writing, filed with the Court, and be actually received by counsel to the Trustee no later than eleven (11) days after the Assignment Schedule is served on the affected occupant (the "Assignment and Cure Objection Deadline"). Service by the objecting party can be by overnight delivery, facsimile transmission, or e-mail, provided that its affidavit of service must contain evidence of actual receipt by those methods and be filed with the Court prior to any hearing on such Objection.

(c) Resolution of Objections. If no objections are received by the Assignment and Cure Objection Deadline, then the proposed assumption and assignment is authorized, subject only to an actual closing on the affected Whitestone Property occurring, and the cure amounts set forth in the Assignment Schedule shall be binding upon the affected occupant for all purposes and will constitute a final determination of total cure required to be paid or performed by the Trustee, payable solely out of any gross proceeds of sale, in connection with the assignment to the successful bidder. In addition, affected occupants shall be forever barred from objecting to the cure information set forth in the Assignment Schedule, including, without limitation, the

18

right to assert any additional cure or other amounts with respect to their respective Lease arising or relating to any period prior to such assumption or assignment. If no objections to the assumption or assumption and assignment are received by the Assignment and Cure Objection Deadline, counsel for the Trustee may submit to the Court a certificate of no objection and a form of order (collectively, the "Certificate of No Objection") granting the requested assumption and assignment of the Lease, and serve such Certificate of No Objection on the affected occupant. The order approving such assumption and assignment may then be entered by the Court twenty-four (24) hours after the Certificate of No Objection is filed. In no event shall a Lease be assumed and assigned other than as part of a closing on the affected Whitestone Property actually occurring.

(d) If a timely objection is received and such objection cannot otherwise be resolved by the parties, the Court may hear such objection at the Sale Hearing, if the Assignment Schedule is served at least eleven (11) days prior thereto, or any later date set by the Court. The pendency of a dispute relating to cure will not prevent or delay the assumption and assignment of any Lease. If an objection is filed only with respect to the cure amount listed on the Assignment Schedule, the Trustee may file a Certificate of No Objection as to assumption and assignment only and the dispute with respect to the cure amount will be resolved consensually, if possible, or, if the parties are unable to resolve their dispute, before the Court. The Trustee intends to cooperate with the occupants to attempt to reconcile any difference in a particular cure amount.

28. The Trustee believes that the preceding assumption and assignment procedures are appropriate under the facts and circumstances of this case.

**REQUESTED RELIEF**

29. The Trustee seeks an Order of this Court, substantially in the form of the proposed order annexed hereto:

(a) Authorizing the sale of the Whitestone Property to the Proposed Stalking Horse Purchaser or to a purchaser making the highest/best offer at the auction;

(b) Approving the terms, conditions and procedures for Trustee's sale of the estate's interest in the Whitestone Property to such purchaser;

(c) Approving the bidding procedures set forth herein;

(d) Approving the manner and extent of notice of the auction sale, if

10039984.1

any;

(e) Allowing Trustee to sell the estate's interest in the Whitestone Property free and clear of all liens, claims, encumbrances and interests with such liens, claims, encumbrances and interests, if any to attach to the proceeds; and

(f) Granting such other relief and further relief as is just and proper under the circumstances.

## BASIS FOR RELIEF

**A. The Sale of the Property Should Be Approved As An Exercise of Trustee's Sound Business Judgment**

30. Bankruptcy Code Section 363 provides, in pertinent part, as follows:

(b)(1) The trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate.

11 U.S.C. § 363(b)(1). The use, sale or lease of property of the estate other than in the ordinary course of business may be conducted if a good business reason exists to support it. *Licensing By Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 387 (2d Cir. 1997), citing *Committee of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1071 (2d Cir.1983). *See also In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989). Here, sound business reasons exist to justify selling the Whitestone Property to the Proposed Stalking Horse Purchaser pursuant to the Stalking Horse Contract of Sale, subject to any higher or better offers that may be received. It is respectfully submitted that permitting the Trustee to proceed with the sale of the Whitestone Property subject to higher and better offers, as requested herein, will maximize the value to be realized for the Whitestone Property.

31. Bankruptcy Code Section 363(f) provides:

20

(f)  The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such; property of an entity other than the estate, only if:

(1)  applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(2)  such entity consents;

(3)  such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)  such interest is in bona fide dispute; or

(5)  such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  Section 363(f) imposes conditions on the ability of a court to authorize a sale that is "free and clear of any interest in such property." *In re Arch Hosp., Inc.*, 530 B.R. 588, 590–91 (Bankr. W.D.N.Y. 2015).  To authorize a sale free and clear of all liens, claims, interests, and encumbrances, a court must find that at least one of the elements listed in 363(f) is satisfied.  *In re GSC, Inc.*, 453 B.R. 132, 183 (Bankr. S.D.N.Y. 2011).  *See also Mich. Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n. 24 (6th Cir. 1991) (since Section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of the five requirements shall suffice to approve the sale of the Property "free and clear" of all liens, claims and encumbrances); *In re Heine*, 141 B.R. 185, 189 (Bankr. D.S.D. 1992) ("The conditions in Section 363(f) are written in the disjunctive, so only one of the five conditions must be met for authority to sell property free and clear of liens"), citing King, *Collier on Bankruptcy* ¶ 363.07 at 363–32.1 (15th ed. 1983).

32.  Here, Abacus, as the secured creditor, has consented to the Sale.

21

**B. The Bidding Procedures Are Fair, Appropriate and
   In The Best Interest of Creditors**

33.     Under Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary course of business may be by private sale or by public auction.   Here, the Trustee has entered into the Stalking Horse Contract of Sale to sell the Whitestone Property for a Purchase Price that is sufficient to pay the secured claims, by scheduling an Auction and soliciting higher and better offers, hopes to attract Competing Bidders and maximize the sale proceeds. *See, e.g., Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a well established principle of bankruptcy law that the . . . duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate"), quoting *Cello Bag Co. Inc. v. Champion Int'l Corp. (In re Atlanta Packaging Prods., Inc.)*, 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988).  "[T]he true test of value is the sale process itself." *In re Boston Generating, LLC*, 440 B.R. 302, 326 (Bankr. S.D.N.Y. 2010).

34.     The Trustee's real estate broker, MYC, will market the Whitestone Property and send notice of the Sale Motion and Bidding Procedures to all parties that Broker believes may be potentially interested in acquiring the Whitestone Property. The Bidding Procedures will allow any prospective bidders and other interested parties time before the Auction to conduct any due diligence required.  If other interested parties are discovered, the Trustee will provide every possible opportunity to such parties to conduct the due diligence such parties need to submit the best possible Qualified Bid.

35.     The Trustee respectfully submits that by proposing the Bidding Procedures set forth herein he will derive the highest and best bids for the Whitestone Property, in accordance with the exercise of the Trustee's business judgment.

10039984.1

### C. The Stalking Horse Contract of Sale Should Be Approved

36.     The Trustee, in his sound business judgment, is recommending that the Court approve the Stalking Horse Contract of Sale.  Although a trustee's business judgment enjoys "great judicial deference," this discretion is not without limit. *In re Bakalis*, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998), *citing In re WPRV–TV, Inc.,* 143 B.R. 315, 319 (D.P.R.1991), *vacated on other grounds,* 165 B.R. 1 (D.P.R.1992), *aff'd in part, rev'd in part,* 983 F.2d 336 (1st Cir.1993). A duty is imposed upon the trustee to maximize the value obtained from a sale, particularly in liquidation cases.  *Bakalis*, 220 B.R. at 532.  *See also In re S.N.A. Nut Co.,* 186 B.R. 98, 104 (Bankr.N.D.Ill.1995) ("When a debtor or trustee conducts a sale under § 363(b), it has an obligation to maximize revenues for the estate."); *In re Mondie Forge, Inc.,* 148 B.R. 499, 502 (Bankr.N.D.Ohio 1992) ("[T]he trustee has a duty to realize the maximum return for the estate for further distribution to the Debtor's creditors."); *DiMarco v. Flannery (In re Flannery),* 11 B.R. 974, 977 (Bankr.E.D.Pa.1981) ("In a liquidation case, the sale to the highest bidder is legally essential....").

37.     Here, the Stalking Horse Contract of Sale is the product of good faith, arm's length negotiations between the Trustee and the Proposed Stalking Horse Purchaser.  The Stalking Horse Contract of Sale provides for the sale of the Whitestone Property for a purchase price of $1,200,000.00, subject to higher or better offers, to be solicited at an Auction after prospective bidders have been given an opportunity to conduct any due diligence that they deem necessary.  A copy of the Stalking Horse Contract of Sale will be provided to each potential bidder, together with a copy of the Bidding Procedures and the Sale Order.  The Successful Bidder must submit a signed purchase agreement substantially in the form of the Stalking Horse Contract of Sale (including, without limitation, terms and conditions substantially similar to those in the Stalking

23

Horse Contract of Sale), and marked to show any changes made to the Stalking Horse Contract of Sale.

38. In view of the foregoing, the Trustee respectfully requests the Court to approve the Stalking Horse Contract of Sale and/or the Stalking Horse Contract of Sale, as modified to reflect the terms of the Successful Bid at the Auction.

**D. The Sale of the Property Has Been Proposed In Good Faith and Without Collusion and The Successful Bidder is a Good Faith Purchaser**

39. Bankruptcy Code Section 363(m) protects a good faith purchaser's interest in property purchased from a debtor's estate, notwithstanding that authorization of the sale conducted under Bankruptcy Code Section 363(b) is later reversed or modified on appeal.

40. Bankruptcy Code Section 363(m) provides as follows:

> (m) The reversal or modification on appeal of an authorization under section (b) or (c) of this section of a sale or lease of property does not affect the sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). While the Bankruptcy Code does not define "good faith," the Second Circuit has held as follows:

> Good faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings. . . . A purchaser's good faith is lost by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

*In re Gucci*, 126 F.3d 380, 390 (2d Cir. 1997) (internal citations omitted).

41. As the Second Circuit Court of Appeals has stated:

> [Bankruptcy Code Section 363(m)] furthers the policy of finality in

10039984.1

> bankruptcy sales . . . and assists bankruptcy courts in maximizing the price for assets sold in such proceedings.  Otherwise potential buyers would discount their offers to the detriment of the bankrupt's estate by taking into account the risk of further litigation and the likelihood that the buyer will ultimately lose the asset, together with any further investments or improvements made in the asset.

*United States v. Salerno*, 932 F.2d 117, 123 (2d Cir. 1991).  *See also In re Stein & Day, Inc*., 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) (noting that Bankruptcy Code Section 363(m) advances the policy of finality in bankruptcy sales).

42.     The Trustee submits that the Proposed Stalking Horse Purchaser or other Successful Bidder is or would be a "good faith purchaser" within the meaning of Bankruptcy Code Section 363(m), and the Stalking Horse Contract of Sale or any similar version thereof, is or would be a good faith agreement based on arm's length negotiations and entitled to the protections of Bankruptcy Code Section 363(m).

43.     This is an arm's length transaction, as the Trustee has no connection to the Proposed Stalking Horse Purchaser and the sale of the Whitestone Property is subject to higher or better offers, which may be tendered at an auction, which is being duly noticed.  The consideration to be received under the Stalking Horse Contract of Sale, or any similar version thereof, is substantial and reasonable with respect to the asset being conveyed.  Additionally, there is no evidence of any "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Gucci*, 126 F.3d at 390.  Thus, the Trustee respectfully submits that either the Proposed Stalking Horse Purchaser or the competing offeror, whomever ultimately tenders the highest or best offer, will be a good faith purchaser of the Whitestone Property.  Consequently, the Trustee requests that the Proposed Stalking Horse Purchaser or competing offeror be afforded the protections of Bankruptcy Code Section 363(m).

10039984.1

**E. The Manner Of Notice And Schedule For The Auction and Sale Confirmation Hearing Are Reasonable And Appropriate Under The Circumstances**

44. The Trustee also respectfully requests the Court to approve the manner of notice of the proposed Auction and Sale Confirmation Hearing. The Trustee submits that this relief will facilitate the Sale process and enable the Trustee to provide interested parties with adequate and sufficient notice of the Auction and related matters.

45. The Trustee proposes to give notice of the Sale Order, the Auction, the Bidding Procedures, and the Sale Confirmation Hearing in the following manner: Within three (3) business days after entry of the Sale Order (the "Mailing Date"), the Trustee will serve notice of the Auction ("Notice of Auction and Sale Confirmation Hearing"), and a copy of the Terms and Conditions of Sale, including the Bidding Procedures, by first class mail, to those parties identified in the Sale Order, including (i) the U.S. Trustee; (ii) counsel to the Proposed Stalking Horse Bidder; (iii) all creditors claiming a security interest in the Whitestone Property; (iv) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002; (v) all parties filing a proof of claim in this case; and (vi) all parties that are known or reasonably believed to have expressed an interest in acquiring the Whitestone Property.

46. The Trustee submits that the proposed notice regarding the Sale Order, the Auction, the Terms and Conditions of Sale (including the Bidding Procedures) and the Sale Confirmation Hearing, and all related objection deadlines, comply fully with Bankruptcy Rule 2002 and constitutes good and adequate notice of the Sale. The Trustee respectfully requests the Court to approve the notice procedures proposed above and in the Sale Order.

**F. Assumption and Assignment Procedures**

47. Bankruptcy Code section 365 states, in relevant part, that ". . . the trustee, subject

10039984.1

to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." See 11 U.S.C. § 365(a). The ability to assume or reject an executory contract allows a trustee to examine an estate's executory contracts and unexpired leases "decide which ones it would be beneficial to adhere to and which ones it would be beneficial to reject." See Orion Pictures Corporation v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1098 (2d Cir. 1993). This decision involves the Trustee's "business judgment," which, in essence, determines whether "assuming the [unexpired lease] would be a good business decision or a bad one." See id. at 1099.

48.     Section 365 also provides in relevant part that:

> "If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee -
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default…;
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
> (C) provides adequate assurance of future performance under such contract or lease."

*See* 11 U.S.C. § 365(b)(1).

49.     As detailed above, the Trustee has never been provided any written proof that any residential occupant of the Whitestone Property have a legal right to use and occupancy. The Trustee believes that the Estate's assumption and assignment of any and all Leases, if any, as part of the sale of the Whitestone Property is in the best interest of the Debtor, its estate and its creditors. Approval of the assumption and assignment of the Leases will permit the Trustee to include those agreements in its proposed Sale of each property, with the inclusion of those agreements in the Sale being critical to the implementation and ongoing operation of each property. It will also

27

prevent the incurrence of rejection damage claims or an occupant's attempt to invoke any putative rights under Section 365(h) of the Bankruptcy Code. Here, the Debtor's Estate is the lessor, not a lessee.

50. Thus, the Trustee has concluded in his business judgment that the assumption and assignment of the Leases, if any, yields the best result for its estate and creditors. Accordingly, the assumption and assignment of the Leases to the Successful Bidder clearly constitutes a rational and responsible exercise of the Trustee's business judgment based on the circumstances.

51. Furthermore, pursuant to Bankruptcy Code section 365(f), and with Court approval, a trustee may assign unexpired leases and executory contracts to third parties if the requirements of Bankruptcy Code section 365(f)(2) are satisfied. Bankruptcy Code section 365(f)(2) provides that a trustee may assign an unexpired leases or executory contract only if: (i) the trustee assumes the contract or lease in accordance with Bankruptcy Code section 365(a) and (b); and (ii) adequate assurance of future performance by the assignee of the contract or lease is provided.

52. Concerning adequate assurance of future performance, the Trustee is providing the occupants with notice and an opportunity to object, as well as proof of adequate assurance. The Assignment Procedures will ensure that all parties against whom relief is sought will have ample notice of such relief and an opportunity to contest any asserted cure amount, as well as the adequacy of the adequate assurance provided.

**G. Waiver of Stay Required by Bankruptcy Rule 6004(h)**

53. The Trustee seeks a waiver of any stay of the effectiveness of the Sale Order. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise. In order to limit the costs of preserving the Whitestone Property and

28

10039984.1

maximize its value for the benefit of the creditors of the Debtor's estate, the Trustee seeks to close the sale as soon as possible taking into consideration the deadline of July 31, 2026. Thus, it is submitted that ample cause exists to justify a waiver of the 14 day stay imposed under Bankruptcy Rule 6004(h). The Trustee further submits that the requirements of Local Rule 6004-1 have been satisfied. Consequently, the Trustee respectfully requests that the Court waive the stay required by Bankruptcy Rule 6004(h) so that the Sale Order is final upon entry.

## SHORTENED NOTICE IS SUFFICENT

54.     Bankruptcy Rule 9006(c)(1) provides that "when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of the court, the court for cause shown may in its discretion with or without motion or notice order the period reduced. Fed.R.Bankr.P.9006(c)(1).

55.     The Trustee submits that the notice is reasonable and constitutes good and sufficient notice. The shortened notice is requested as time is of the essence. The Trustee continues to incur monthly expenses, including insurance and maintenance of the Brooklyn Property. The secured creditors have been waiting an extended period of time for payment of their claims against the Brooklyn Property.

## WAIVER OF MEMORANDUM OF LAW

56.     This Motion does not raise any novel issues of law and the authorities relied upon are cited herein. Accordingly, the Trustee respectfully submits that the requirements of Rule 9013-1(a) of the Local Bankruptcy Rules for the Eastern District of New York are satisfied.

10039984.1

**WHEREFORE**, it is respectfully requested that the Court enter an Order pursuant to 11 U.S.C. §§ 105, 363 and Rules 2002, 6004, 9004 and 9006 (c)(1) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), (i) authorizing the Trustee to sell the real property located at 3-24 150th Street, Whitestone, New York 11357 (the "Whitestone Property"), pursuant to the terms as set forth in the Contract of Sale between "Richard J. McCord, as Chapter 7 Trustee for the Estate of Albert Lau." as seller, and "61 Nison Badalov LLC, as purchasers ("Proposed Stalking Horse Purchaser") and executed by Proposed Stalking Horse Purchaser on June 8, 2026, for the total sum of One Million Two Hundred Thousand Dollars ($1,200,000.00) (the "Purchase Price") subject to higher and betters offers at public auction, free and clear of all liens, claims, encumbrances and other interests, with such liens, claims, encumbrances and other interests (collectively, the "Liens") to attach to the net proceeds of sale with the same validity and priority as such Liens had prior to the sale; (ii) as part of the sale, assuming and assigning any and all leases and/or tenancies, if any, for any occupants in the Whitestone Property; (iii) scheduling a hearing to approve the sale of the Whitestone Property to the successful bidder; (iv) approving terms and conditions for submitting offers and approving the form and manner of notice with respect to the hearing; (v) approving shortened notice for the requested relief pursuant to Section 105 of the Bankruptcy Code ad

Bankruptcy Rule 9006 (c)(1); and (vi) granting such other, further and different relief as this Court deems just, proper and equitable.

Dated:  East Meadow, New York
          June 15, 2026

**CERTILMAN BALIN ADLER & HYMAN, LLP**
Counsel for the Chapter 7 Trustee

By:  /s/ Richard J. McCord
      Richard J. McCord, Esq.
      Robert D. Nosek, Esq.
      90 Merrick Avenue
      East Meadow, New York 11554
      (516) 296-7000
      rmccord@certilmanbalin.com

10039984.1