# EXHIBIT E

<u>*CONTRACT OF SALE*</u>

**WARNING:** NO REPRESENTATION IS MADE THAT THIS FORM OF CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE COMPLIES WITH SECTION 5-702 OF THE GENERAL OBLIGATIONS LAW ("PLAIN ENGLISH").

**CONSULT YOUR LAWYER BEFORE SIGNING IT.**

**NOTE: FIRE AND CASUALTY LOSSES AND CONDEMNATION.** This Contract form does not provide for what happens in the event of fire or casualty loss or condemnation before the title closing. Unless different provision is made in this Contract, Section 5-1311 of the General Obligations Law will apply. One part of that law makes a purchaser responsible for fire and casualty loss upon taking possession of the Premises before the title closing.

**CONTRACT OF SALE** (this "Contract") made as of the **8th** day of **June, 2026,** between

**RICHARD J. McCORD, as Chapter 7 Trustee of the Estate of Albert Lau,** having an office at 90 Merrick Avenue, 9th Floor, East Meadow, New York 11554, hereinafter referred to as the Seller or the Trustee; and

**61 NISON BADALOV LLC,** having an address at 1052 East 102nd Street, Brooklyn, NY 11236, hereinafter referred to as the Purchaser.

1. **Premises.** Seller shall sell and convey, and Purchaser shall purchase, the property, together with all buildings and improvements thereon, hereinafter referred to as the Premises, more fully described on a separate page marked Schedule A, annexed hereto, made a part hereof and also known as:

Street Address: **3-24 150th Street, Whitestone, New York 11357**

Tax Map Designation: County: **Queens**     Block: **495**     Lot: **101**

Together with Seller's ownership rights, if any, in any land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller shall deliver at no additional cost to Purchaser, at Closing, or thereafter, on demand, any documents which Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

2. **Personal Property.** This sale also includes all fixtures and articles of personal property attached to or used in connection with the Premises, unless specifically excluded below. They include, but are not limited to, plumbing, heating, lighting and cooking fixtures, bathroom and kitchen cabinets and counters, door hardware, mantels, doors, mirrors, awnings, mail box, flagpole, pumps, shrubbery, fencing, outdoor statuary, tool shed, dishwasher, washing machine(s), clothes dryer(s), garbage disposal unit, range, oven, built-in microwave oven, refrigerator, freezer, central air conditioning, ceiling fans, alarm system, wall-to-wall carpeting where it presently exists, and built-ins not excluded below, **ALL TO THE EXTENT THEY EXIST AT THE PREMISES IN AS-IS WHERE-IS CONDITION.**

Excluded from this sale are furniture, household furnishings, and/or other items of personal property not specifically referred to in this Contract.

3. **Purchase Price.** The Purchase Price is payable as follows:               $    **1,200,000.00**

(a) on the signing of this Contract, by Purchaser's official bank check payable to the Escrow Agent (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to paragraph 6 of this Contract, (the "Down Payment"):      $    **120,000.00**

(b) balance at Closing in accordance with paragraph 7:      $    **1,080,000.00**

4. **Existing Mortgage.** Intentionally deleted.

5. **Purchase Money Mortgage.** Intentionally deleted.

6. **Down Payment in Escrow.** (a) The check for the Down Payment shall be made payable to Richard J. McCord as Trustee, hereinafter referred to as the Escrow Agent. The Escrow Agent shall hold the Down Payment in escrow in a segregated bank account until Closing or sooner termination of this Contract and shall pay over and apply the Down Payment **in accordance with the guidelines established by the U.S. Department of Justice, Executive Office for the United States Trustees, Chapter 7 Trustees Handbook, which shall supersede this Contract in the event of a conflict**.

The social security or federal identification numbers of the parties shall be furnished to Escrow Agent upon request.

(b) The parties acknowledge that Escrow Agent is acting solely as a stakeholder at their request and for their convenience and that Escrow Agent shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this Contract or involving gross negligence on the part of Escrow Agent. Seller and Purchaser jointly and severally (with right of contribution) agree to defend (by attorneys selected by Escrow Agent), indemnify and hold Escrow Agent harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrow Agent's duties hereunder, except with respect to actions or omissions taken or suffered by Escrow Agent in bad faith or in willful disregard of this contact or involving gross negligence on the part of Escrow Agent.

(c) Escrow Agent may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from acting upon the advice of such counsel.

(d) Escrow Agent acknowledges receipt of the Down Payment by check subject to collection and Escrow Agents agreement to the provisions of this paragraph by signing in the place indicated on the signature page of this Contract.

(e) Escrow Agent or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Down Payment or any other dispute between the parties whether or not Escrow Agent is in possession of the Down Payment and continues to act as Escrow Agent.

7. **Acceptable Funds.** All money payable under this Contract unless otherwise specified, shall be either:

(a) By wire to Escrow Agent no less than two (2) business days prior to Closing;

(b) Official check of any bank, savings bank, trust company, or savings and loan association having a banking office in the State of New York, payable to the order of Seller;

(c) Money other than the purchase price, payable to Seller at Closing, may be by check of Purchaser up to the amount of five hundred ($500.00) dollars; or

(d) As otherwise agreed to in writing (which may be by email) by Seller or Seller's attorney.

8. **Mortgage Contingency. This Contract is NOT contingent upon Purchaser obtaining financing. This transaction shall be a true "all-cash" transaction, and Purchaser shall not finance this Purchase. This is a material term of this Contract. Purchaser represents and warrants that Purchaser has sufficient assets to consummate the transaction contemplated by this Contract.**

9. **Permitted Exceptions.** The Premises are sold and shall be conveyed subject to:

(a) Zoning and subdivision laws and regulations, provided that they are not violated by the buildings and improvements erected on the property or their use;

(b) Consents for the erection of any structures on, under or above any streets on which the Premises abut;

(c) Encroachments of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway;

(d) Covenants, easements, restrictions and agreements of record, if any, now in effect and not violated by existing structures nor the present use thereof;

(e) Any state of facts an accurate survey may reveal.

10. **Governmental Violations & Orders.** (a) Seller shall **have no obligation to** comply with ~~all~~ **any** notes or notices of violations of law or municipal ordinances, orders or requirements noted in or issued by any governmental department having authority as to lands, housing, buildings, fire, health and labor conditions affecting the Premises ("**Violations**") as of the Closing date. ~~The Premises shall be transferred free of them at Closing.~~ **In the event there exist any Violations as of the Closing date, Seller shall pay any monetary fine imposed by the governmental department having authority over the Premises to the Purchaser in the form of a credit against the Purchase Price. This shall be Seller's sole obligation with respect to Violations.** Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters.

(b) In the event that the aggregate cost of payment for the Violations mentioned in the above paragraph should exceed the sum of **$500.00**, then Seller shall have the option of either canceling this Contract, or paying the same. If Seller exercises his option to cancel this Contract, then the Purchaser shall have the right, within ten (10) days after receiving written notice of the exercise by the Seller of such option, to reinstate this Contract upon written notice, in which case (i) Purchaser shall accept title to the Premises subject to all of the said Violations, and (ii) Purchaser shall receive a credit toward the Purchase Price of $500.00.

**(c) No representation is made as to the legality of any structure on the Premises and Seller shall not be required to obtain a certificate of occupancy, certificate of completion or equivalent for any structure that may exist at the Premises. Seller shall not be required to close or withdraw any open permit that may exist at the Premises. Seller shall not be required to obtain any variance for any**

**structure or condition that exists on or at the Premises.**

11. **Seller's Representations.** (a) Seller represents and warrants to Purchaser that:

(i) Deleted;

(ii) Seller has the full right, power and authority to sell, convey and transfer the Premises in accordance with the terms of this Contract; and

(iii) Seller is not a "foreign person," as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code (IRC) Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA"); and

(iv) Seller has not been known by any other name for the past ten years.

(b) Seller covenants and warrants that all representations and warranties as set forth in this Contract shall be true and correct at Closing.

(c) Except as otherwise expressly set forth in this Contract, none of Seller's covenants, representations, warranties or other obligations contained in this Contract shall survive Closing.

12. **Condition of Property.** (a) **Purchaser acknowledges and represents that Purchaser is fully aware of the current physical condition and state of repair of the Premises and of all other property included in this sale, based upon Purchaser's own inspection and investigation thereof,** and that Purchaser is entering into this Contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale (if any), given or made by Seller or its representatives. The Purchaser has relied solely upon such investigations, examinations and inspections as the Purchaser has chosen to make or had made. The Purchaser acknowledges that the Seller has afforded the Purchaser the opportunity to conduct a full and complete investigation, inspection and examination and this Contract is not conditioned on any inspections of any kind other than as may be set forth in this Contract.

(b) **PURCHASER SHALL ACCEPT THE PREMISES IN ITS PRESENT CONDITION AND STATE OF REPAIR, "AS IS, WHERE IS, WITH ALL FAULTS" SUBJECT TO REASONABLE USE, WEAR, TEAR, AND NATURAL DETERIORATION BETWEEN THE DATE HEREOF AND THE DATE OF CLOSING, WITHOUT ANY REDUCTION IN THE PURCHASE PRICE OR CLAIM OF ANY KIND FOR ANY CHANGE IN SUCH CONDITION BY REASON THEREOF SUBSEQUENT TO THE DATE OF THIS CONTRACT.**

(c) Purchaser and its authorized representatives shall have the right, at a reasonable time, and upon reasonable notice to Seller, to inspect the Premises before Closing.

(d) Title to any personal property and/or appliances included in this sale shall pass to Purchaser upon delivery of deed, but no part of the Purchase Price shall be deemed to have been to pay for same. **ALL OF THE ITEMS OF PERSONAL PROPERTY AND/OR APPLIANCES INCLUDED IN THIS SALE ARE SOLD IN "AS IS, WHERE IS" CONDITION WITH ALL FAULTS AS OF THE DATE OF CLOSING.**

13. **Insurable Title.** Seller shall give and Purchaser shall accept such title as **Advantage Title Agency Group LLC or** any **other** reputable title company, a member of The New York Board of Title Underwriters, shall be willing to approve and insure, in accordance with its standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for in this Contract. **Seller acknowledges that Purchaser may engage any title company of its choice in connection with this transaction; however, Seller strongly recommends that Purchaser engage Advantage Title Agency Group LLC with respect to this transaction. Purchaser expressly acknowledges and agrees that if the title company selected by Purchaser refuses to insure title free of any matter(s), and another abstract company or title company will insure title free of such matter(s) at no additional premium, then Seller shall have the right to transfer the title order from Purchaser's selected title company and engage such other abstract company or title company on Purchaser's behalf and at Purchaser's cost and expense.**

14. **Closing, Deed and Title.** (a) "Closing" means the settlement of the obligations of Seller and Purchaser to each other under this Contract, including the payment of the Purchase Price and all adjustments to Seller, and the delivery to Purchaser of a **Trustee's Deed** in proper statutory form for recording, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise stated herein. The deed will contain a covenant by Seller as required by Section 13 of the Lien Law.

(b) ~~If Seller is a corporation, it shall deliver to Purchaser at the time of Closing (a) a resolution of its Board of Directors authorizing the sale and delivery of the deed, and (b) a certificate by the Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law. The deed in such case shall contain a recital sufficient to establish compliance with that section.~~

15. **Closing.** (a) **Date and Place. SUBJECT TO THE PROVISIONS OF PARAGRAPH 31 BELOW,** the Closing shall take place at the offices of Certilman Balin Adler & Hyman, LLP, located at 90 Merrick Avenue, 9th Floor, East Meadow, NY 11554, at 10:00 a.m., **on or before the earlier to occur of (i) thirty (30) calendar days' following the entry of the Order (as hereinafter defined), and (ii) July 31, 2026** (the "Closing Date"), **TIME BEING OF THE ESSENCE as to Purchaser only.**

(b) **Possession After Closing.** The Premises shall be delivered at Closing subject to leases, tenancies, and/or other occupancy rights. If there are any tenants and/or other occupants at the Premises as of the date hereof, Purchaser shall accept title to the Premises with or without said tenants and/or other occupants in possession of the Premises at Closing.

(c) **Tenancy.** Except as expressly stated in this Contract, Seller makes no representations with respect to any leases, tenancies, or occupancies at the Premises. Seller shall not be obligated to assign any existing lease at Closing and makes no representations with respect to the payment of rent or security deposit(s).

16. **Conditions to Closing.** This Contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:

(a) The accuracy, as of the Closing Date, of the representations and warranties of Seller made in this Contract.

(b) Intentionally deleted.

(c) Intentionally deleted.

10035707.2

(d) Intentionally deleted.

(e) The delivery of the Premises in the condition called for in this Contract.

(f) Intentionally deleted.

(g) Intentionally deleted.

(h) The delivery by the parties of any other affidavits required as a condition of recording the deed.

17. **Deed Transfer and Recording Taxes.** At Closing, official bank checks payable to the order of the Title Company or the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by ~~law or by~~ this Contract to pay such transfer and/or recording tax, together with any required tax returns duly executed and sworn to by the appropriate parties, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing.

**PURCHASER SHALL PAY THE NEW YORK CITY REAL PROPERTY TRANSFER TAXES, AND THE SO-CALLED "MANSION TAX." SELLER SHALL PAY THE NEW YORK STATE TRANSFER TAX.**

18. **Apportionments and Other Adjustments.** (a) At the Closing, to the extent applicable, the following shall be apportioned as of midnight of the day before the date of Closing or delivery of possession, whichever is later: (i) taxes, assessments, water charges and sewer rents, as applicable, on the basis of the fiscal period for which assessed; and (ii) fuel, if applicable.

(b) If the Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the old tax rate for the preceding period applied to the latest assessed valuation.

(c) If there is a water meter on the Premises, Seller shall use its best efforts to furnish a final reading to a date not more than five (5) days before the Closing Date and pay the same. If a final water reading is not obtained prior to closing, the unfixed water meter charge and sewer rent, if any, shall be apportioned on the basis of the last available reading.

(d) Any errors or omissions in computing apportionments at Closing shall be corrected. This subparagraph shall survive the Closing for a period of sixty (60) days.

19. **Allowance for Unpaid Taxes, Etc.** Seller has the option to credit Purchaser as an adjustment of the Purchase Price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less than two (2) business days after Closing, provided that official bills therefor computed to said date are produced at Closing.

20. **Use of Purchase Price To Remove Encumbrances.** If at Closing there are other liens or encumbrances that Seller is obligated to pay and discharge, Seller may use any portion of the balance of the Purchase Price to pay or discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances of record, together with the cost of recording or filing such instruments. As an alternative, Seller may deposit sufficient monies with the title

insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's lender clear of such matters. Upon request made within a reasonable time before Closing, Purchaser agrees to provide separate certified checks as requested to assist in clearing up these matters.

21. **Title Examination.** (a) Purchaser shall order an examination of title in respect of the Premises from a title company licensed or authorized to issue title insurance by the New York State Insurance Department or any agent for such title company promptly after the execution of this Contract. Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorneys for Seller no **later than five (5) days from Purchaser's receipt thereof**. If any objections or exceptions cannot be cleared by Seller by the Closing Date, then the Seller shall be entitled to a reasonable adjournment for the purpose of clearing such objections or exceptions. Seller shall not be required to bring any action or proceeding to render title marketable or insurable, or to make the Premises legal for the use represented above. **If any title objections or exceptions cannot be cleared by Seller, then Seller, in its sole and absolute discretion, shall have the right to choose an alternate title company or abstract company on behalf of Purchaser, and Purchaser shall accept such title as any reputable title company, a member of The New York Board of Title Underwriters, shall be willing to approve and insure, in accordance with its standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for in this Contract.**

(b) **Seller's Inability to Convey Title.** If for any reason whatsoever, Seller is unable to transfer title to Purchaser in accordance with the provisions of this Contract or deliver the Premises in accordance with any other conditions set forth in this Contract, and if Purchaser refuses to accept such title as Seller may be able to deliver, then Seller may rescind this Contract and Seller's sole liability shall be to refund the Down Payment. Upon such refund, this Contract shall be canceled, and neither Seller nor Purchaser shall have any further rights against the other.

22. **Affidavit as to Judgments, Bankruptcies, etc.** If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver a satisfactory detailed affidavit at Closing showing that they are not against Seller.

23. **Defaults and Remedies.** If Purchaser defaults hereunder, **Seller shall provide Purchaser with written notice of Purchaser's default. If Purchaser fails to correct said default within ten (10) days after receipt of notice from Seller, Seller may terminate this Contract, and retain the down payment made hereunder. Seller's sole remedy in the event of Purchaser's default** shall be to receive and retain the Down Payment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default are impossible to ascertain and that the Down Payment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

If Seller defaults hereunder, Purchaser's sole remedy shall be to terminate this Contract and receive a refund of the Down Payment. Purchaser shall not have the right to specific performance or to any other remedy at law or in equity.

24. **Purchaser's Lien.** ~~All money paid on account of this Contract, and the reasonable expenses of examination of the title to the Premises and of any survey and survey inspection charges are~~ The Down Payment is hereby made a lien on the Premises and collectable out of the Premises. ~~Such lien shall not continue after default in performance of the contract by Purchaser.~~

10035707.2

25. **Notices.** All notices and extensions of time limits set forth herein shall be sent in writing, by national overnight delivery service, directed to the respective parties as follows:

(a) in case of notices required to be given to the Seller, by mailing said notices to the Seller's attorney via a reputable overnight courier service:
**Certilman Balin Adler & Hyman, LLP, Attn: Carrie C. Adduci, Esq., 90 Merrick Avenue, 9th Floor, East Meadow, New York 11554, with a copy by email to cadduci@certilmanbalin.com; and**

(b) in the case of notices required to be given to the Purchaser, by mailing said notices to the Purchaser's attorney via a reputable overnight courier service: **Xiangan Gong, Esq., 38-08 Union Street, Suite 2G, Flushing, NY 11354, with a copy by email to xagong@gmail.com.**

26. **Non-Assignability.** Except as expressly set forth in this Paragraph 26, this Contract may not be assigned by Purchaser without the prior written consent of Seller in each instance, and any purported assignment made without such consent shall be void. **Purchaser shall have a one-time right to assign this Contract and Purchaser's interest hereunder provided Purchaser complies with the following conditions precedent: (i) Purchaser must not be in default under the Contract at the time of the assignment, (ii) the assignee must be an entity which is owned and controlled by 61 NISON BADALOV LLC, (iii) Purchaser must provide notice to Seller's attorney no less than fifteen (15) days prior to said assignment by providing a copy of the assignee's entity/trust documents and the proposed assignment, and (iv) Purchaser delivers the sum of $750.00 to Seller's attorney for the review of assignee's documents and the assignment.**

27. **Broker.** (a) The parties represent and warrant to each other that they have not dealt with any broker in connection with this sale other than **Landmark International RE LLC** ("Purchaser's Broker") **and MYC & Associates, Inc.** (the "Listing Broker" and together with Purchaser's Broker, collectively, the "Broker").

(b) Seller agrees to pay the Listing Broker the commission earned thereby, pursuant to separate agreement by and between Seller and the Listing Broker. **Purchaser shall pay Purchaser's Broker the commission earned thereby, pursuant to separate agreement by and between Purchaser and Purchaser's Broker.** Seller and Purchaser shall indemnify and hold each other harmless from and against any claim, judgment, liability, cost or expense, including, without limitation, reasonable attorney's fees, arising out of the breach on their respective parts of any representation or agreement contained in this paragraph. The provisions of this paragraph shall survive the Closing, or if the Closing does not occur, the termination of this Contract.

28. **Miscellaneous.** (a) All prior understandings, agreements, representations and warranties, oral and written, between Seller and Purchaser are merged in this Contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statements made by anyone else that are not set forth in this Contract.

(b) Neither this Contract nor any provision thereof may be waived, changed or canceled except in writing. This Contract shall also apply to and bind the heirs, distributees, legal representatives, successors and permitted assigns of the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this Contract.

(c) Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this Contract may require it.

(d) The captions in this Contract are for convenience of reference only and in no way define, limit, or

describe the scope of this Contract and shall not be considered in the interpretation of this Contract or any provision hereof.

(e) This Contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.

(f) Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This sub-paragraph shall survive Closing.

(g) Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and documents and take such other action as may be reasonably be requested by the other in order to carry out the intent and purpose of this Contract. This sub-paragraph shall survive Closing.

(h) This Contract is intended for the exclusive benefit of the parties hereto, and, except as otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or be enforceable by, any other entity.

(i) Both parties are represented by counsel and waive the provisions of the plain language laws contained in the General Obligations Law.

(j) Except as otherwise expressly provided herein, all representations and warranties, covenants and the like, made by the Seller herein of any kind, shall merge in and shall not survive delivery of the deed.

(k) This Contract shall be dated as of the day fully executed duplicate originals of the contract are received by the attorney for the Purchaser.

29. **Intentionally deleted.**

30. **Lead Paint Warning Statement and Risk Assessment Contingency.** (a) Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk in pregnant women. The seller of any interest in residential real property is required to provide the purchaser with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the purchaser of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase. Seller(s) represent that they have no knowledge of nor any reasonable suspicion that the Premises contain lead-based paint and/or lead-based paint hazards.

(b) Purchaser does hereby waive the right to have the Premises inspected in order to ascertain the presence of lead-based paint hazards.

31. **Contract Subject to Lender's Short Sale Approval. NOTWITHSTANDING ANY PROVISION IN THIS CONTRACT TO THE CONTRARY, SELLER'S OBLIGATION UNDER THIS CONTRACT TO TRANSFER TITLE TO THE PREMISES TO PURCHASER IS STRICTLY CONDITIONED UPON, AND IS SUBJECT TO, SELLER OBTAINING APPROVAL OF THE SAME FROM ABACUS FEDERAL SAVINGS BANK ("LENDER"). SELLER REPRESENTS THAT IT RECEIVED LENDER'S APPROVAL TO SELL THE PREMISES TO PURCHASER AS LONG AS THE CLOSING OCCURS NO LATER THAN JULY 31, 2026 ("LENDER'S**

APPROVAL DEADLINE"). IF THE CLOSING DOES NOT OCCUR ON OR BEFORE LENDER'S APPROVAL DEADLINE, FOR ANY OR NO REASON, AND LENDER DOES NOT EXTEND LENDER'S APPROVAL DEADLINE, THEN SELLER SHALL TERMINATE THIS CONTRACT AND RETURN THE DOWNPAYMENT TO PURCHASER, AND THEREAFTER NEITHER PARTY SHALL HAVE ANY FURTHER RIGHTS OR OBLIGATIONS UNDER THIS CONTRACT, EXCEPT THOSE THAT EXPRESSLY SURVIVE THE TERMINATION OF THIS CONTRACT. IF THE LENDER REVOKES ITS APPROVAL, FOR ANY OR NO REASON, THEN SELLER SHALL TERMINATE THIS CONTRACT AND RETURN THE DOWNPAYMENT TO PURCHASER, AND THEREAFTER NEITHER PARTY SHALL HAVE ANY FURTHER RIGHTS OR OBLIGATIONS UNDER THIS CONTRACT, EXCEPT THOSE THAT EXPRESSLY SURVIVE THE TERMINATION OF THIS CONTRACT.

[No Further Text on This Page – Signature Page to Follow]

IN WITNESS WHEREOF this Contract of Sale was entered into by and among the parties as of the day and year first above written.

**PURCHASER:**

**61 NISON BADALOV LLC**
By: Fangqin Liu

**SELLER:**

**RICHARD J. McCORD, as Chapter 7 Trustee**
**of the Estate of Albert Lau**

Receipt of the Down Payment is hereby acknowledged and the undersigned agrees to act as Escrow Agent in accordance with the provisions of paragraph 6.

RICHARD J. McCORD, as Trustee

# RIDER TO CONTRACT OF SALE

**SELLER:** RICHARD J. McCORD, as Chapter 7 Trustee of the Estate of Albert Lau

**PURCHASER:** 61 NISON BADALOV LLC

**PREMISES:** 3-24 150th Street, Whitestone, NY 11357

=================================================================

1. This Rider is a made a part of the Contract of Sale described above. If any provisions of this Rider shall be in conflict with any printed provision of the Contract of Sale, the provisions of this Rider shall control.

2. **Bankruptcy Court Approval.** a. The obligations of Trustee and Purchaser under this Contract are expressly conditioned upon entry of an order by the bankruptcy court (the "Bankruptcy Court") approving or authorizing this Contract or approving or authorizing Trustee to execute, deliver and perform this Contract and containing the terms described below (the "Order"). In the event the Bankruptcy Court fails to enter the Order within one hundred twenty (120) days after the full execution hereof, either Trustee or Purchaser may terminate this Contract by written notice to the other. In such event, the Down Payment shall be returned to Purchaser within five (5) business days.

b. The Order must be in a form reasonably acceptable to Trustee. The Order shall provide that all liens, claims and encumbrances affecting the premises, other than the Permitted Exceptions as herein defined, shall be subject and subordinate in lien and priority to this Contract, and shall, if valid, attach to the proceeds of the sale (net of all Trustee administrative expenses) payable pursuant to this Contract. All such liens and encumbrances shall hereinafter be referred to as "Subordinate Liens and Encumbrances" and the Premises shall be conveyed to Purchaser free and clear of the Subordinate Liens and Encumbrances. If this transaction fails to close for any reason, then such Liens and Encumbrances shall affect the Premises in accordance with their terms.

c. If Purchaser or Trustee shall terminate this Contract pursuant to this Paragraph, then this Contract shall be deemed terminated and Trustee shall promptly return the Down Payment previously paid by Purchaser hereunder, together with all accrued interest thereon, if any, and upon such return of funds to Purchaser, there shall be no further liabilities or obligations upon either of the parties hereto except for those which by the express terms hereof survive such a termination.

d. The Premises are sold and shall be conveyed subject to all terms, conditions, and requirements contained in the Order.

3. **Higher and/or Better Offers.** a. This Contract is conditioned upon Trustee not receiving, after notice and hearing, a higher or better offer which Trustee is prepared to accept, but Trustee agrees that no offer shall be deemed higher or better unless it provides for a Purchase Price equal to or greater than ONE MILLION TWO HUNDRED FIFTY THOUSAND and 00/100 ($1,250,000.00) DOLLARS. If such an offer is accepted by Trustee and approved or authorized by the Bankruptcy Court, whether or not this Contract has previously been approved or authorized by the Bankruptcy

10035707.2

Court, (a) this Contract shall be deemed terminated with respect to the named Purchaser referred to in the preamble of this Contract and any assignee of the same, (b) the Down Payment, together with any accrued interest, if any, shall be returned to said Purchaser upon the Closing of title to the Premises by the successful bidder, and (c) neither party shall have any further rights or obligations hereunder, except rights or obligations under this Contract which expressly survive Closing or other termination of the Contract. Notwithstanding the foregoing, if the successful bidder fails to close title to the Premises, this Contract shall be reinstated, and Purchaser shall be obligated to close title to the Premises in accordance with the terms of this Contract.

b. If Trustee elects to conduct an auction of the Premises, then with respect to any offer at such auction that is received, accepted and approved, the offeror shall assume all of the terms of this Contract as Purchaser hereunder (as such terms, including those with respect to the Purchase Price, shall have been modified by the terms of the auction), and this Contract shall not thereafter be conditioned upon or subject to Trustee's not receiving a higher or better offer.

4. **Condition of Premises.** a. Purchaser acknowledges that it has fully examined the Premises and is purchasing the Premises in "as is, where is" condition "with all faults" and specifically and expressly without any warranties, representations or guarantees, from or on behalf of Trustee and its agents. Purchaser has not relied, and is not relying, upon any information, document, sales brochures or literature, maps or sketches, projection, proforma, statement, representation, guarantee or warranty (whether express or implied, or oral or written, or material or immaterial) that may have been given by or made by or on behalf of Trustee.

b. Purchaser hereby acknowledges that it shall not be entitled to, and should not, rely on Trustee or its agents as to: (i) the quality, nature, adequacy or physical condition of the Premises including, but not limited to, the structural elements, foundation, roof, appurtenances, access, landscaping, parking facilities or the electrical, mechanical, HVAC, plumbing, sewerage or utility systems, facilities or appliances at the Premises, if any; (ii) the quality, existence, nature, adequacy or physical condition of soils, sub-surface support or ground water at the Premises; (iii) the existence, quality, nature, adequacy or physical condition of any utilities serving the Premises; (iv) the existence, quality, nature or adequacy of any ability to access utilities, including, but not limited to, electricity, natural gas, water and sewer; (v) the existence, quality, nature, adequacy, physical condition, or ability to access any rights of way or roads of any kind; (vi) the development potential of the Premises, its habitability, merchantability or fitness, suitability or adequacy of the Premises for any particular purpose; (vii) the zoning classification, use or other legal status of the Premises; (viii) the existence, applicability, quality or nature of any setback requirements; (ix) the Premises' or its operations' compliance with any applicable codes, laws, regulations, statutes, ordinances, covenants, conditions or restrictions or any governmental or quasi-governmental entity or of any other person or entity; (x) the quality of any labor or materials relating in any way to the Premises; or (xi) compliance with any environmental or occupational protection, pollution, subdivision or land use laws, rules, regulations, orders or requirements including, but not limited to, those pertaining to the handling, generating, treating, storing or disposing of any hazardous waste, material or substance. The provisions of this paragraph shall survive Closing.

**5. Balance of Sale Proceeds. The parties acknowledge that Seller is a Trustee in a bankruptcy proceeding and Seller cannot accept any funds via wire. All amounts due to Seller under this Contract must be paid via official bank check unless expressly agreed to otherwise by Seller in writing.**

**6. Property Condition Disclosure Act.** The Purchaser hereby acknowledges that the transaction contemplated herein is a transfer by a trustee in bankruptcy and, as such, is exempt provisions of the Property Condition Disclosure Act, 2001 N.Y. Laws 5339-A, effective March 1, 2002. Seller is not familiar with the condition of the property and has made no representation with regard to the same. Purchaser represents that it has either a) obtained a home inspection or house engineering inspection, together with a termite inspection, lead based paint inspection, and all other inspections desirable by Purchaser, and Purchaser is satisfied with the results thereof, or b) had the opportunity to obtain a home inspection or house engineering inspection together with a termite inspection, lead based paint inspection, and all other inspections desirable by Purchaser and has waived its right to the same. Purchaser hereby waives, releases, and discharges all rights, claims, and actions against the Seller and against the Premises resulting or arising from said Property Condition Disclosure Act. Purchaser acknowledges that it **WILL NOT** receive a property condition disclosure statement or any credit at closing. This provision shall survive closing of title and delivery of the deed to the Premises to Purchaser.

**7. Electronic Signature and Counterparts.** This Contract may be executed in any number of counterparts, all of which when taken together shall constitute one and the same instrument. Electronic signatures shall be deemed originals for purposes hereof.

The Parties hereto execute this Rider attached and made a part of that Certain Contract of Sale by and between Seller and Purchaser for premises known as 3-24 150th Street, Whitestone, NY 11357 as of the date first written above.

**PURCHASER:**

**61 NISON BADALOV LLC**
By: Fangqin Liu

**SELLER:**

**RICHARD J. McCORD, as Chapter 7 Trustee of the Estate of Albert Lau**

## Schedule A

## Legal Description

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of Queens, City and State of New York, bounded and described as follows:

BEGINNING at a point on the westerly side of 150th Street (8th Avenue) distant 208.57 feet southerly from the corner formed by the intersection of the southerly side of 3rd Avenue (26th Street) and the westerly side of 150th Street;

RUNNING THENCE southerly along the westerly side of 150th Street 61.05 feet (61.76 feet more or less, tax map);

THENCE westerly on a line forming an interior angle of 80 degrees 30 minutes with the westerly side of 150th Street, 127.69 feet (127.80 feet tax map);

THENCE northerly on a line forming an interior angle of 93 degrees 23 minutes 20 seconds with the previous course, 60.48 feet;

THENCE easterly on a line forming an interior angle of 84 degrees 36 minutes 40 seconds with the previous course, 123.29 feet (123.27 feet tax map) to the westerly side of 150th Street at the point or place of BEGINNING.