UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re:

Chapter 7

ALBERT LAU,

Case No: 25-43298-ess

Debtor.

----------------------------------------------------------------X

**ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 363 (I) APPROVING (A) BIDDING PROCEDURES FOR THE SALE OF THE REAL PROPERTY LOCATED AT 3-24 150TH STREET, WHITESTONE, NEW YORK 11357; (B) DESIGNATION OF STALKING HORSE BIDDER, (C) BID PROTECTIONS IN FAVOR OF THE STALKING HORSE BIDDER, (D) DATE AND TIME FOR AN AUCTION AND A HEARING FOR APPROVAL OF THE SALE, AND (E ) THE FORM AND MANNER OF NOTICE THEREOF; (II) AN ORDER APPROVING THE SALE OF THE REAL PROPERTY LOCATED AT 3-24 150TH STREET, WHITESTONE, NEW YORK 11357 FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS**

UPON the application dated June 15, 2026 ("Application")(Dkt. No. __) of Richard J. McCord, Chapter 7 Trustee ("Trustee") for the Estate of Albert Lau. ("Debtor"), by and through his attorneys, Certilman Balin Adler & Hyman, LLP, seeking entry of an Order pursuant to 11 U.S.C. §§ 105, 363 and Rules 2002, 6004, 9004 and 9006 (c)(1) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), (i) authorizing the Trustee to sell the real property located at 3-24 150th Street, Whitestone, New York 11357 (the "Whitestone Property"), pursuant to the terms as set forth in the Contract of Sale between "Richard J. McCord, as Chapter 7 Trustee for the Estate of Albert Lau." as seller, and "61 Nison Badalov LLC, as purchasers ("Proposed Stalking Horse Purchaser") and executed by Proposed Stalking Horse Purchaser on June 8, 2026, for the total sum of One Million Two Hundred Thousand Dollars ($1,200,000.00) (the "Purchase Price") subject to higher and betters offers at public auction, free and clear of all liens, claims, encumbrances and other interests, with such liens, claims, encumbrances and other interests (collectively, the "Liens") to attach to the net proceeds of sale with the same validity and priority as such Liens had prior to

1

the sale; (ii) as part of the sale, assuming and assigning any and all leases and/or tenancies, if any, for any occupants in the Whitestone Property; (iii) scheduling a hearing to approve the sale of the Whitestone Property to the successful bidder; (iv) approving terms and conditions for submitting offers and approving the form and manner of notice with respect to the hearing; (v) approving shortened notice for the requested relief pursuant to Section 105 of the Bankruptcy Code ad Bankruptcy Rule 9006 (c)(1); and (vi) granting such other, further and different relief as this Court deems just, proper and equitable (the "Motion"); and the Motion having come on for a hearing before the Court on June ___, 2026; and the Trustee and his counsel having appeared at the hearing in support thereof; and it appearing that the requested relief is appropriate; and after due deliberation; it is

**ORDERED**, that the Motion is granted and the Trustee is authorized to sell the Estate's right, title and interest in and to the Whitestone Property to the highest and best bidder at an auction sale, free and clear of all liens, claims and encumbrances, with such Liens to attach to the net proceeds of sale with the same validity and priority as such Liens had prior to the sale; and it is further

**ORDERED**, that MYC Associates, Inc. ("MYC") shall conduct an action sale on **July 17, at 11:00 a.m.**; and it is further

**ORDERED**, that the Trustee shall cause the auction sale to be advertised on (i) the website of MYC and (ii) a publication as chosen by the Trustee in consultation with MYC; and it is further

**ORDERED,** that the following bidding procedures (the "Bidding Procedures") as set forth in the Application are hereby approved:

> (a)    These terms and conditions of sale ("Terms and Conditions of Sale") are being promulgated in connection with the United States Bankruptcy Court, Eastern District of New York ("Bankruptcy Court") authorized auction sale ("Sale") of Debtor's real property commonly known 3-24 150[th]

10051287.1

Street, Whitestone, New York 11357 ("Whitestone Property"). The seller of the Properties is Richard J. McCord, Chapter 7 Trustee ("Trustee" and/or "Seller") for the estate of Albert Lau, debtor ("Debtor"), a debtor in a Chapter 7 case currently pending in the Bankruptcy Court under the caption and case number set forth above; The Trustee's retained real estate broker ("Broker") is MYC & Associates, Inc. ("MYC"), 1110 South Avenue, Suite 22, Staten Island, New York 10314; Telephone (347) 273-1258; email: sales@myccorp.com; and website: www.MYCcorp.com.

(b)     The auction sale ("Sale") will take place online via Zoom on July 17, 2026, at 11:00 a.m. The bid deadline is July 16, 2026, at 5:00 p.m. Only those who submit a Competing Offer, as that term is defined in ¶e below, and qualify to bid on the Properties, will receive the Zoom link to participate in the Sale.

( c)     Information regarding the Sale of the Whitestone Property can be obtained by contacting the Trustee's counsel at the telephone number and address set forth herein or by contacting MYC or on the MYC website which information is set forth in paragraph "A" above.

(d)     The Trustee, in his sole discretion and under his business judgment authority, has entered into a stalking horse contract ("Agreement") with a potential buyer ("Stalking Horse Bidder") that offers a purchase price that Trustee deems to be a reasonable and valid purchase offer ("Stalking Horse Offer"). The Trustee shall use the Stalking Horse Offer as the reserve sale price at the Sale, such that the Stalking Horse Offer will be the opening bid at the Sale.

®     In order to be considered by the Court and admissible on the date of the Sale Hearing, any competing offer ("Competing Offer") must satisfy the following terms and conditions: (i) a Competing Offer shall provide for a Purchase Price of at least $50,000.00 more than the Purchase Price or at least $1,250,000.00; (ii) the Competing Offer shall be substantially similar to the terms and conditions of the Agreement; (iii) a higher or better Competing Offeror must sign these Terms and Conditions of Sale agreeing to be bound by the terms and conditions of the Agreement; (iv) the Competing Offer shall have demonstrated, to the sole satisfaction of the Trustee and his counsel, evidence of its ability to conclude the transaction upon the terms and conditions of the Agreement, without delay; (v) the Competing Offer shall not be conditioned upon the outcome of unperformed due diligence by the Competing Offeror with respect to the Properties which are the subject of the Agreement; and (vi) the Competing Offeror shall provide, before the Sale Hearing, a certified check made payable to Richard J. McCord as Chapter 7 Trustee, the sum of ten percent (10%) of the proposed purchase price as the Deposit, as that term is defined in ¶g below.

10051287.1

(f)      In order to be permitted to bid on the Property by 5:00 p.m. (EST) on  July 16, 2026, and as a condition to be able to bid on the Whitestone Property at the Sale, each prospective bidder must: (i) register with MYC; (ii) deliver to MYC the original signed Terms and Conditions of Sale; and (iii) tender a bank check in the amount of $125,0000.00 ("Qualifying Deposit") made payable to "Richard J. McCord, Chapter 7 Trustee", which amount shall serve as a good faith deposit against payment of the purchase price by such bidder in the event that such bidder is determined to have made the highest or best bid ("Successful Bidder").

(g)      Within forty-eight (48) hours after conclusion of the Sale, the Successful Bidder of the Whitestone Property shall deliver to the Trustee a bank check which amount must be equal to ten (10%) percent of the successful bid, minus the Qualifying Deposit (together with the Qualifying Deposit, the "Deposit").  The Successful Bidder for the Whitestone Property must execute, and thereby agree to be bound by: (i) these Terms and Conditions of Sale; and (ii) a Memorandum of Sale.  At the conclusion of the Sale, the Trustee, or his representative, will return the Qualifying Deposits to all other bidders.  The Trustee, however, shall retain the Qualifying Deposit of the second highest bidder ("Second Bidder").

(h)      The Successful Bidder, or its assigns, must close title (the "Closing") to the Properties on a date (the "Closing Date") that is not more than thirty (30) calendar days after the entry of an order of the Bankruptcy Court confirming the Sale, TIME BEING OF THE ESSENCE AS TO THE SUCCESSFUL BIDDER, OR ITS ASSIGNS. The Closing Date may be extended solely by the Trustee in his sole discretion. The Closing will take place using a method and at a location that is to be determined by the Trustee.

(i)      The Bankruptcy Court, prior to the Closing, must enter an Order confirming the Sale.

(j)      The Successful Bidder, or its assigns, shall be responsible solely and shall pay any and all New York City, New York State, or other applicable real property transfer taxes incurred by the transfer of the Whitestone Property by Debtor's estate at the Closing. The Successful Bidder, or its assigns, acknowledges that he, she, or it, will be responsible for the completion of any ACRIS forms, if required.

(k)      In connection with the Closing and Closing Date, the Successful Bidder, or its assigns, is hereby given notice that **Time is of the Essence against the Successful Bidder, or its assigns, and the failure of the Successful Bidder, or its assigns, to close for any reason whatsoever (except as otherwise provided below) including his, her, or its, failure to pay the balance of the Purchase Price on the Closing Date, will result**

4

10051287.1

**in the Trustee retaining the Deposit as liquidating damages and the termination of the Successful Bidder, or its assigns, right to acquire the Property under these Terms and Conditions of Sale**. The Successful Bidder, or its assigns, shall be obligated to close title to the Whitestone Property and there is no contingency of any kind or nature that will permit the Successful Bidder, or its assigns, to cancel or avoid his, her, or its, obligation under these Terms and Conditions of Sale other than the Trustee's inability to deliver insurable title to the Whitestone Property. Further, the Successful Bidder, or its assigns, must demonstrate, to the satisfaction of the Trustee or the Bankruptcy Court, as the case may be, evidence of his, her, or its, ability to conclude the transaction upon these Terms and Conditions of Sale, without delay. The Trustee reserves the right to reject any bidder/offeror, who the Trustee, in his sole discretion, believes is not financially capable of consummating the purchase of the Whitestone Property. **Expenses incurred by the Successful Bidder, or its assigns, or any competing bidder concerning the performance of any due diligence, such as obtaining title reports or environmental inspections, shall be the sole financial responsibility of such bidder and under no circumstances shall the Trustee, the Debtor's estate, MYC, or the Trustee's retained professionals, be liable or responsible for, or pay, such expenses.**

(l)     In the event that the Successful Bidder for the Whitestone Property, or its assigns, fails to tender the balance of the Purchase Price on the Closing Date, or otherwise perform his, her, or its, obligations under these Terms and Conditions of Sale, the Trustee, at his sole option, shall immediately negotiate the Qualifying Deposit of the Second Bidder and shall be further authorized to sell the Whitestone Property to the Second Bidder, or its assigns, without any further notice or approval of the Bankruptcy Court, without giving credit to the Second Bidder for the Deposit forfeited by the Successful Bidder, and upon such other terms and conditions as the Trustee deems necessary and/or appropriate. Should the Second Bidder, or its assigns, fail to close on the Whitestone Property within twenty (20) days of receiving from the Trustee, notice, **TIME BEING OF THE ESSENCE**, (at the address set forth on the bidder registration form) that said Second Bidder is now deemed the Successful Bidder, then the **Sellers shall be: (a) authorized to keep the Qualifying Deposit of the Second Bidder as liquidated damages**; and (b) authorized but not obligated to sell the Properties to the next highest bidder, without any further notice or approval of the Court.

(m)     The Whitestone Property are being sold and delivered free and clear of all liens, claims and encumbrances of whatever kind or nature, excepting any open building permits (which the Trustee has determined do not exist), to the extent the sale of the Whitestone Property includes items of personal property, the transfer shall be "as is" and without warranty, express,

5

10051287.1

statutory, or implied, as to discretion, title, condition, location, quality, fitness or any particular use or purpose or otherwise.

(n)     The Whitestone Property is being sold and delivered **"AS IS", "WHERE IS", "WITH ALL FAULTS"**, without any representations, covenants, guarantees or warranties of any kind or nature whatsoever, and free and clear of all monetary liens, claims and encumbrances of whatever kind or nature, such liens, claims, interests and encumbrances, if any, to attach to the proceeds of Sale in such order and priority as they existed immediately prior to the Sale Date, and subject to, among other things: (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; ® environmental conditions; and (f) subject to all deed restrictions.  By delivering their respective Qualifying Deposits, all bidders acknowledge that they have had the opportunity to review and inspect the Whitestone Property, the state of title thereof and laws, rules and regulations applicable thereto, and the form of the Trustee's Deed that the Trustee will execute to convey the Whitestone Property, and will rely solely thereon and on their own independent investigations and inspections of the Whitestone Property in making their bids.  All bidders acknowledge that they have conducted their own due diligence in connection with the Whitestone Property and are not relying on any information provided by the Trustee, MYC, or the Trustee's retained professionals.

(0)     The Whitestone Property will be delivered subject to any and all existing tenancies and occupancies.

(p)     The Trustee, MYC, and Trustee's retained professionals have not made and do not make any representations or warrantees with respect to the permissible uses of the Whitestone Property, the physical condition, rents, leases, expenses, operations, value of the land or buildings thereon, number of building lots, use or any other matter or thing affecting or related to the Whitestone Property or the Sale, that might be pertinent to the purchase of the Whitestone Property, including, without limitation: (a) the current or future real estate tax liability, assessment or valuation of the Whitestone Property; (b) the potential qualification of the Whitestone Property for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (c) the compliance or non-compliance of the Whitestone Property, in its current or any future state, with applicable current or future zoning ordinances or other land use law or regulation, or the ability of the owner of the Whitestone Property to obtain a change in the zoning or use, or a variance in respect to the Whitestone Property; (d) the availability of

6

10051287.1

any financing for the purchase, alteration, rehabilitation or operation of the Whitestone Property from any source, including, but not limited to, any state, city, local government or federal government or institutional lender; ® the current or future use of the Whitestone Property; (f) the present and future condition and operating state of any and all machinery or equipment in the Whitestone Property and the present or future structural and physical condition of any buildings thereon or its suitability for rehabilitation or renovation; (g) the ownership or state of title of any personal property in the Whitestone Property; (h) the presence or absence of any laws, ordinances, rules or regulations issued by any governmental authority, agency or board and any violations thereof; (i) any present or future issues concerning subdivision or non-subdivision of the Whitestone Property; or (j) the compliance or non-compliance of the Whitestone Property with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos or other hazardous materials anywhere in the Whitestone Property. Each bidder hereby expressly agrees and acknowledges that no such representations have been made. The Trustee and his retained professionals shall not be liable or bound in any manner by expressed or implied warranties, guaranties, promises, statements, representations or information pertaining to the Whitestone Property, made or furnished by the Trustee or any real estate broker, agent, employee, servant or other person or professional representing or purporting to represent the Trustee unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in a signed writing by the Trustee.

(q) The Trustee shall convey the Whitestone Property by delivery of a Trustee's quitclaim deed. The quality of title shall be that which a reputable title insurance company doing business in the State of New York is willing to approve and insure. At the Trustee's option, he may arrange for the issuance of a title insurance policy by a reputable title company, if the Successful Bidder is unable to do so, at the sole cost and expense of the Successful Bidder. The Trustee shall provide all documents required by the Successful Bidder's title company for them to 'omit' any exceptions from the Successful Bidder's title policy.

® Nothing contained in these Terms and Conditions of Sale shall supersede or alter any provisions of Title 11, United States Code ("Bankruptcy Code") and/or of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") or otherwise interfere with the jurisdiction of the Bankruptcy Court. To the extent of any conflict between the Bankruptcy Code and/or the Bankruptcy Rules and these Terms and Conditions of Sale, the Bankruptcy Code and/or the Bankruptcy Rules shall govern. All of the terms and conditions set forth in these Terms and Conditions of Sale are subject to modification as may be directed by the Trustee, or by the Bankruptcy Court. The Trustee reserves the right to modify these Terms

10051287.1

and Conditions of Sale at the Sale, or thereafter, without further order of the Bankruptcy Court, so long as they maintain consistency with the provisions of the Bankruptcy Code, Bankruptcy Rules, and/or orders of the Bankruptcy Court.

(s) Neither the Trustee, MYC, the Trustee's retained professionals, nor Debtor's estate, are liable or responsible for the payment of fees of any broker or agent that has not been retained by an order of the Bankruptcy Court.

(t) These Terms and Conditions of Sale will be read into the record, or specifically incorporated by reference, at the Sale of the Whitestone Property. By making a bid for the Whitestone Property, all bidders shall be deemed to have acknowledged having read, and understand, these Terms and Conditions of Sale and have agreed to be bound by them.

(u) The Trustee shall be a party to the Sale of the Whitestone Property exclusively in his capacity as trustee in bankruptcy and not as an individual. If the Trustee is unable to deliver title to the Whitestone Property in accordance with these Terms and Conditions of Sale for any reason whatsoever, his only obligation will be to refund the Deposit to the Successful Bidder (or Second Bidder) and upon such refund the Successful Bidder (or Second Bidder) will have no recourse or claim against the Trustee, the Trustee's retained professionals, or Debtor's estate.

(v) The Trustee reserves his right to withdraw the Whitestone Property from the Sale, either prior or subsequent to the Sale, for any reason whatsoever, as he deems necessary or appropriate.

(w) The Sale of the Whitestone Property is subject to confirmation by the Bankruptcy Court. The Trustee or the Trustee's attorney shall notify the Successful Bidder whether the Sale is confirmed. Any disputes concerning the Sale shall be determined by the Bankruptcy Court. By participating in the Sale, all bidders consent to the jurisdiction of the Bankruptcy Court to determine such disputes arising in the Debtor's pending case.

(x) **By making a bid for the Whitestone Property, all bidders shall be deemed to have acknowledged having read, and understand, these Terms and Conditions of Sale and have agreed to be bound by them.**

ORDERED, that the Whitestone Property is being sold and delivered "AS IS", "WHERE IS", "WITH ALL FAULTS", without any representations, covenants, guarantees or warranties of any kind or nature whatsoever, as set forth in the Terms and Conditions of Sale; and it is further

10051287.1

**ORDERED**, that in the event the Auction is held, the Court shall hold a hearing on **July ___, 2026, at _____ (prevailing Eastern Time)** (the "Sale Approval Hearing"), before the Honorable Elizabeth S. Stong, at the United States Bankruptcy Court for the Eastern District of New York, 271-C Cadman Plaza East, Courtroom 3585, Brooklyn, New York 11201, to determine whether to approve the sale of the Whitestone Property to the Successful Bidder at the Auction; and it is further

**ORDERED**, that if the Trustee does not receive a Competing Offer, he is authorized to move forward with closing on the Stalking Horse Contract without further order of this Court, provided, however, that the Trustee shall file a Notice of Cancellation of Auction prior to the scheduled auction date, with the Court thereafter marking the Sale Approval Hearing off the Court's calendar; and it is further

**ORDERED**, that you may appear at the hearing in person or video, as the Court deems appropriate; whether the hearing is in person or by video, please use eCourt Appearances to register to appear at a hearing. To register, please provide your name, address, e-mail address, telephone number, and the party that you represent, if applicable. Please be sure to register at least two business days before your hearing. For video hearings, you will receive instructions on how to access the hearing via e-mail two business days before the hearing. On your hearing date, please connect at least ten minutes before your scheduled hearing time and keep your audio and video on mute until your case is called; if you have a CM/ECF account, you may access eCourt Appearances in the "Utilities" menu after logging into CM/ECF. Alternatively, you may access eCourt Appearances on the Court's website at https://ecf.nyeb.uscourts.gov/cgi-bin/nyebAppearances.pl. **In the event that you are not able to register online**, you may call or email Judge Stong's courtroom deputy for instructions at (347) 394-1864, ess_hearings@nyeb.uscourts.gov, at least

two (2) business days prior to the hearing date and additional information about eCourt Appearances, including a tutorial on how to use the program, is available at https://www.nyeb.uscourts.gov/registering-remote-hearing-appearance-using-ecourtappearances; and it is further

**ORDERED**, that the Trustee is hereby authorized and empowered to take the steps necessary to sell the Whitestone Property as described herein, to the highest and/or best bidder, free and clear of all liens, claims and encumbrances, with such Liens to attach to the net proceeds of sale with the same validity and priority as such Liens had prior to the sale; and it is further

**ORDERED**, that the Stalking Horse Contract of Sale, copy of which is attached to the Motion as Exhibit E, is hereby approved; and it is further

**ORDERED**, that the Proposed Stalking Horse Bidder shall be bound to purchase the Whitestone Property pursuant to and subject to the terms of the Stalking Horse Contract of Sale; and it is further

**ORDERED**, that the Proposed Stalking Horse Bidder's Deposit shall be held in escrow pending closing; and it is further

**ORDERED**, that all liens, claims and encumbrances shall be subject to and subordinate to the Successful Bidder's rights under the Stalking Horse Contracts of Sale, as modified in accordance with the terms of the Successful Bid, and shall, to the extent of their validity and in their order of priority, attach to the net proceeds of sale; and it is further

**ORDERED**, that the Queens County Register's Office, or the appropriate government office, is hereby directed to accept from the Proposed Stalking Horse Purchaser, or Successful Bidder, the Trustee's Deed of sale for the Whitestone Property for recordation; and it is further

10

**ORDERED**, that the Trustee shall not distribute the net proceeds of sale without further order of this Court; and it is further

**ORDERED**, that pursuant to New York Tax Law §1405(b)(8), the Trustee is exempt from paying real estate transfer taxes to New York State for the conveyance of the Whitestone Property; and it is further

**ORDERED**, that the Proposed Stalking Horse Purchaser or Successful Bidder at the Auction is/are responsible to pay all other transfer taxes, including, without limitation, the New York City transfer tax, the so-called "mansion tax" and any transfer taxes imposed upon a Stalking Horse Purchaser by statute, the title insurance premium and the costs of searches and services charge by the Title Company (if any), the cost of all recording charges in connection with the closing other than the charges incurred to record documents in connection with the clearing of title by Trustee pursuant to the Stalking Horse Contract of Sale (which recording charges shall be paid by Trustee), except as otherwise provided therein, but pending proof of payment of said transfer taxes by the Proposed Stalking Horse Purchaser or Successful Bidder, the Trustee shall hold in escrow sufficient funds to pay said transfer taxes; and it is further

**ORDERED**, that the Stalking Horse Bidder is entitled to, and hereby is granted, the protections afforded by Section 363(m) of the Bankruptcy Code with respect to the Whitestone Property; and it is further

**ORDERED**, that the fourteen (14) day stay under Bankruptcy Rule 6004(h) is waived; and it is further

**ORDERED**, that the Trustee is authorized to take such other actions as may be necessary and appropriate to implement the terms of the Stalking Horse Contract of Sale and this Order; and it is further

11

**ORDERED**, that the assumption and assignment procedures, annexed hereto as **Exhibit A**, are hereby approved; and it is further

**ORDERED**, that the Trustee shall serve this Order by not later than three (3) business days after date of entry of this Order upon (i) Debtor's counsel; (ii) Debtor); (iii) counsel for the Proposed Stalking Horse Purchaser; (iv) Proposed Stalking Horse Bidder; (v) all creditors claiming a security interest in the Whitestone Property; (vi) occupant of the Whitestone Property (vii) the Office of the Corporation Counsel of the City of New York; (viii) all parties filing a notice of appearance in this case; (ix) all parties filing proofs of claim in this case; and (x) the Office of the United States Trustee, which notice shall be deemed sufficient notice of the Auction, the Bidding Procedures and the Sale Confirmation Hearing; and it is further

**ORDERED**, that the Trustee shall file an affidavit of service with the Court by not later than five (5) business days after entry of this Order; and it is further

**ORDERED**, that the Bankruptcy Court shall retain jurisdiction over this matter.

10051287.1

(a) <u>Notice of Assignment Procedures</u>. The Trustee will file an assignment schedule (the "Assignment Schedule") with the Court and serve such Assignment Schedule on each affected occupant by any reasonable means, including, first class mail, facsimile transmission, e-mail, or overnight delivery service.  The Assignment Schedule will include (i) the name of the affected occupant, (iii) any applicable cure amounts through July __, 2026, including a per diem calculation, if necessary; (iv) the identity of the proposed assignee, and (vi) the deadline by which the affected Tenant must object.  Within five (5) days after entry of an order approving this Motion, the Trustee shall serve on each occupant a package of materials from the proposed assignee evidencing the proposed assignee's ability to perform as lessor under the Leases related to the respective Whitestone Property ("Adequate Assurance Packet"). If a different proposed assignee becomes known after the filing and service of an Assignment Schedule because of the results of the Auction, the Trustee shall provide each affected Tenant with the applicable Adequate Assurance Packet.

(b) <u>Objection to Assumption and Assignment of Leases and Cure Procedures</u>. Any objections ("Objection") to the assumption and assignment of any Lease identified on the Assignment Schedule, including to the cure amount set forth on such schedule, must be in writing, filed with the Court, and be actually received by counsel to the Trustee no later than eleven (11) days after the Assignment Schedule is served on the affected occupant (the "Assignment and Cure Objection Deadline"). Service by the objecting party can be by overnight delivery, facsimile transmission, or e-mail, provided that its affidavit of service must contain evidence of actual receipt by those methods and be filed with the Court prior to any hearing on such Objection.

(c) <u>Resolution of Objections</u>. If no objections are received by the Assignment and Cure Objection Deadline, then the proposed assumption and assignment is authorized, subject only to an actual closing on the affected Whitestone Property occurring, and the cure amounts set forth in the Assignment Schedule shall be binding upon the affected occupant for all purposes and will constitute a final determination of total cure required to be paid or performed by the Trustee, payable solely out of any gross proceeds of sale, in connection with the assignment to the successful bidder. In addition, affected occupants shall be forever barred from objecting to the cure information set forth in the Assignment Schedule, including, without limitation, the right to assert any additional cure or other amounts with respect to their respective Lease arising or relating to any period prior to such assumption or assignment. If no objections to the assumption or

13

assumption and assignment are received by the Assignment and Cure Objection Deadline, counsel for the Trustee may submit to the Court a certificate of no objection and a form of order (collectively, the "Certificate of No Objection") granting the requested assumption and assignment of the Lease, and serve such Certificate of No Objection on the affected occupant. The order approving such assumption and assignment may then be entered by the Court twenty-four (24) hours after the Certificate of No Objection is filed. In no event shall a Lease be assumed and assigned other than as part of a closing on the affected Whitestone Property actually occurring.

(d) If a timely objection is received and such objection cannot otherwise be resolved by the parties, the Court may hear such objection at the Sale Hearing, if the Assignment Schedule is served at least eleven (11) days prior thereto, or any later date set by the Court. The pendency of a dispute relating to cure will not prevent or delay the assumption and assignment of any Lease. If an objection is filed only with respect to the cure amount listed on the Assignment Schedule, the Trustee may file a Certificate of No Objection as to assumption and assignment only and the dispute with respect to the cure amount will be resolved consensually, if possible, or, if the parties are unable to resolve their dispute, before the Court. The Trustee intends to cooperate with the occupants to attempt to reconcile any difference in a particular cure amount.

10051287.1